■ JOSEPH ANAYA, Appellant, v TOWN SPORTS INTERNATIONAL, INC., et al., Defendants, and SPORT ROCK INTERNATIONAL, INC., et al., Respondents. [843 NYS2d 599]—

Order, Supreme Court, New York County (Leland DeGrasse, J.), entered January 24, 2006, which, to the extent appealed from as limited by the briefs, granted the separate motions of defendants Sport Rock International (Sport Rock) and Petzl America, Inc. (Petzl) for summary judgment dismissing the complaint as against them, unanimously modified, on the law, the motions denied with respect to plaintiff's claims based on design defect and failure to warn, and otherwise affirmed, without costs.

Plaintiff sustained severe personal injuries when he fell from a height of approximately 30 feet while descending a rock climbing wall that was operated by defendant Town Sports International, Inc. of West Nyack (TSI). The accident occurred because an employee of TSI tied the safety line plaintiff was using to a non-weight-bearing gear loop on the harness plaintiff was wearing; the line should have been tied to the "anchor point" of the harness. As plaintiff descended the wall the gear loop tore away from the harness, causing plaintiff's fall. The harness was sold to TSI by Sport Rock and manufactured by Petzl.

Plaintiff asserts causes of action for, among other things, negligence and strict products liability. Plaintiff asserts that Sport Rock and Petzl are liable for his injuries because the safety harness was defectively designed and insufficient warnings were provided regarding where on the harness the safety line was supposed to be tied. Sport Rock moved for summary judgment dismissing the complaint and all other claims as asserted against it, and Petzl moved separately for similar relief. Plaintiff cross-moved for a special trial preference and to dismiss the affirmative defenses of Sport Rock and Petzl premised on

the alleged absence of personal jurisdiction over those defendants. Supreme Court granted the motions of Sport Rock and Petzl, and denied plaintiff's cross motion. Plaintiff appeals, as limited by his brief, from those portions of the order that granted the motions of Sport Rock and Petzl.*

Petzl's argument that plaintiff failed to oppose its motion before Supreme Court and that plaintiff therefore lacks standing to maintain this appeal is without merit. Plaintiff expressly opposed the motions of Sport Rock and Petzl for the reasons stated by TSI in its opposition to the motions.

To establish a prima facie case for strict products liability based on defective design, the plaintiff must show that the product "was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983]). With respect to the first element—whether the product was not reasonably safe—the proper inquiry is "whether it is a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner" (*id.* at 108). In balancing the product's risks against its utility and cost, the following factors must be considered: "(1) the utility of the product to the public as a whole and to the individual user; (2) the nature of the product—that is, the likelihood that it will cause injury; (3) the availability of a safer design; (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (5) the ability of the plaintiff to have avoided injury by careful use of the product; (6) the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff; and (7) the manufacturer's ability to spread any cost related to improving the safety of the design" (*id.* at 109).

Since the harness was undoubtedly meant to bear the weight of a climber, it was reasonably foreseeable that a climber might attempt to attach a safety line to various parts thereof and expect those parts to bear his weight. In fact, both these defendants admitted that novice climbers had been known to attach safety lines to gear loops and other parts of the harness. Rather than designing the gear loop to be weight bearing, or omitting it from the design, Petzl decided to make it appear flimsy in the expectation that the user would not attempt to attach a line to it. Whether this decision was reasonable in view

* Plaintiff settled this action with TSI.

of the questionable utility of a gear loop on a harness used for indoor rock climbing and the serious risk posed is a question for the jury (*Voss*, 59 NY2d at 108-109; *see also Denny v Ford Motor Co.*, 87 NY2d 248 [1995]).

Triable issues of fact also exist regarding plaintiff's cause of action for strict products liability based on failure to warn. "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known" (*Liriano v Hobart Corp.*, 92 NY2d 232, 237 [1998]). This rule applies with equal force to distributors and retailers (*see Godoy v Abamaster of Miami*, 302 AD2d 57 [2003]). Foreseeing the potential that harness users might tie safety lines to gear loops, Petzl warned against such conduct. This warning appeared in the manual accompanying the harness and in a technical notice. A small label on the harness contained a "skull and crossbones" symbol and directed the user to refer to the manual and technical notice. There is expert evidence, however, that these warnings were inadequate because no warning on the harness itself specifically advised against tying a safety line to the gear loop. Thus, the sufficiency of the warnings must be determined by a jury.

Contrary to the assertions of Sport Rock and Petzl, we cannot determine as a matter of law that the conduct of TSI's employee was a superseding act. "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence. If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980] [citations omitted]).

Here, TSI's employee testified that she knew the safety line was not to be tied to the gear loop. However, she did not know what purpose the gear loop served, and accidently tied the safety line to it. While it appears that this employee had minimal training on the proper use of the harness and had not read the manual or technical notice, the record does not permit a finding that the employee's conduct was unforeseeable as a matter of law. The record is replete with evidence indicating the foreseeability of the risk that novice users of the harness (or for that matter other inexperienced persons such as the employee) might mistakenly tie safety lines to gear loops. Had the harness been

designed without a gear loop or with a weight bearing gear loop, or had clearer warnings been on the harness itself, the accident may have been prevented. Accordingly, triable issues of fact exist regarding whether the alleged defective design of the harness, the alleged inadequate warnings, or both, was a substantial factor in causing plaintiff's injuries (*see id.* ["Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences . . . these issues generally are for the fact finder to resolve"]).

Plaintiff's remaining contentions are without merit. Concur— Friedman, J.P., Nardelli, Sweeny, McGuire and Malone, JJ.