[878 NYS2d 339]

Sport Rock International, Inc., et al., Appellants, v American Casualty Company of Reading, Pa., Respondent.

First Department, May 12, 2009

**APPEARANCES OF COUNSEL**

*Callan, Koster, Brady & Brennan, LLP*, New York City (*Michael P. Kandler* of counsel), for appellants.

*Bonner Kiernan Trebach & Crociata, LLP*, New York City (*Alexander H. Gillespie* of counsel), for respondent.

**OPINION OF THE COURT**

FRIEDMAN, J.

The main question presented on this appeal is whether the costs of defending an insured in an underlying personal injury action should be allocated between two primary liability insurers or, pursuant to the policies' respective "other insurance" clauses, imposed on only one of the two insurers on a primary basis. Consistent with longstanding precedent, we hold that the carrier whose coverage is rendered excess by reason of the competing "other insurance" clauses will not become obligated to defend the insured until the other carrier's coverage has been exhausted. This result is not affected by the fact that certain allegations against the insured in the underlying action, while within the scope of the excess carrier's coverage, were outside the scope of the other carrier's duty to indemnify the insured.

This declaratory judgment action arises from an underlying personal injury action captioned *Joseph Anaya v Town Sports International, Inc., et al.* (Sup Court, NY County, index No. 101027/2003 [the *Anaya* action]). Joseph Anaya was severely injured on January 14, 2003, when he fell while using an artificial rock-climbing wall at a fitness club. The indoor wall-climbing system had been sold to the club by Sport Rock International, Inc. (Sport Rock), a plaintiff in this action. The wall-climbing equipment that the club purchased from Sport

Rock included a safety harness manufactured by Petzl America, Inc. (Petzl). It has been established in the *Anaya* action that "[t]he accident occurred because an employee of [the club] tied the safety line [Anaya] was using to a non-weight-bearing gear loop on the [Petzl] harness," rather than to the harness's "anchor point" (*Anaya v Town Sports Intl., Inc.*, 44 AD3d 485, 485 [2007]). The club having settled with Anaya (*see id.* at 486 n), the *Anaya* action proceeds against Sport Rock and Petzl on two theories, namely, that Petzl's design for the harness was defective and that Petzl failed to include warning labels on the harness necessary to render it safe (*id.* at 486-488).

At the time of Joseph Anaya's accident, Sport Rock was covered as a named insured under a commercial general liability (CGL) policy issued by Evanston Insurance Company (Evanston), Sport Rock's coplaintiff in this action. The Evanston policy provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and further provides that the insurer "will have the right and duty to defend the insured against any 'suit' seeking those damages." The insurance provided by the Evanston policy applies to, inter alia, "bodily injury" that "occurs during the policy period."

In addition, Sport Rock was covered at the time of the Anaya accident as an additional insured under the CGL policy issued to Petzl by American Casualty Company of Reading, Pa. (American), the defendant in this action. The American policy (like the Evanston policy) provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and further provides that the insurer "will have the right and duty to defend the insured against any 'suit' seeking those damages." The insurance provided by the American policy applies to, inter alia, "bodily injury" that occurs, and for which a claim against the insured is first made, during the policy period. Sport Rock is afforded additional insured coverage under the American policy pursuant to an endorsement entitled "Additional Insured-Vendors" (the vendor's endorsement), which provides in pertinent part:

> "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule [including Sport Rock], but only with respect to

'bodily injury' or 'property damage' arising out of 'your [i.e., Petzl's] products' shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions [omitted here]."[1]

The relevant "other insurance" clause of Sport Rock's policy from Evanston states:

"When you are added to a manufacturer's or distributor's policy as an additional insured because you are a vendor for such manufacture[r]'s or distributor's products, . . . [the] Other Insurance [clause of this policy] is amended by the addition of the following:

"The coverage afforded the insured under this Coverage Part [i.e., the policy's CGL Form] will be excess over any valid and collectible insurance available to the insured as an additional insured under a policy issued to a manufacturer or distributor for products manufactured, sold, handled or distributed."

The "other insurance" clause of Petzl's policy from American states that the policy provides primary coverage (except under specified circumstances, none of which applies here), and that, if other primary insurance is available, "we will share with all that other insurance by the method" provided elsewhere in the policy (either by equal shares or in proportion to policy limits, depending on what the other insurance permits).[2]

---

**1.** As recognized by the Court of Appeals, a vendor's endorsement to a manufacturer's liability policy " 'covers the vendors' liability arising out of their role in passing the manufacturer's product on to customers, but does not cover vendors for their own negligence. Coverage under the vendor's endorsement is limited to injuries arising out of a defect in the manufacturer's product' " (*Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 NY3d 157, 164 [2005], quoting 9 Couch on Insurance 3d § 130:3 [1997]).

**2.** The American policy's "other insurance" clause provides in pertinent part:

"4. Other Insurance
"If other valid and collectible insurance is available to the insured for a loss we cover under Coverage[ ] A [Bodily Injury and Property Damage Liability] . . . of this Coverage Part [the CGL Coverage Form], our obligations are limited as follows:
"a. Primary Insurance
"This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any

*(n. cont'd)*

After the *Anaya* action was commenced, Evanston tendered Sport Rock's defense to American. American acknowledged that the policy it issued to Petzl affords Sport Rock coverage for the *Anaya* action as an additional insured pursuant to the policy's vendor's endorsement. Nonetheless, American ultimately refused to bear the entire cost of Sport Rock's defense. In support of this position, American pointed out that the claims and theories of liability asserted against Sport Rock in the *Anaya* action were not limited to the Petzl harness's allegedly defective design and lack of adequate warning labels. For example, the *Anaya* complaint alleged that Sport Rock had negligently installed the wall-climbing system and that features of the wall-climbing system other than the Petzl harness (such as the landing mats) were also defective. Based on its assessment of the proportion of the claims in the *Anaya* action that were related to the Petzl harness, American offered to cover only 10% of the cost of Sport Rock's defense.

In response to American's refusal to take over Sport Rock's defense, Sport Rock and Evanston commenced this action seeking damages for breach of contract and a declaration that American is obligated to provide primary coverage for both defense and indemnification in the *Anaya* action and that, pursuant to the "other insurance" clause of the Evanston policy, Evanston's coverage of Sport Rock in the *Anaya* action "is in the nature of excess coverage only over and above the limits" of the American policy. After joinder of issue, Sport Rock and Evanston moved for summary judgment. The motion court granted the motion only to the extent of declaring that American has an obligation to defend Sport Rock in the *Anaya* action, refusing to declare that Evanston's coverage is excess to American's coverage for purposes of either defense or indemnification. In particular, the motion court was persuaded by American's argument that "the Evanston policy remained primary for those claims not within the vendor's endorsement" to the American policy (2007 NY Slip Op 32684[U], *6). On Sport Rock's and Evanston's appeal, we modify to declare that, for purposes of the *Anaya* action, Sport Rock's coverage from Evanston is excess to Sport Rock's primary coverage from American under the vendor's endorsement to Petzl's American policy.

---

of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below."
Subsection b specifies conditions under which the American policy's coverage will be deemed excess. None of those conditions is satisfied in this case.

## Duty to Defend

The motion court recognized that Sport Rock, as an additional insured under the policy American issued to Petzl, is entitled to a complete defense from American in the *Anaya* action. "[T]he well-understood meaning of the term [additional insured] is an entity enjoying the same protection as the named insured" (*BP A.C. Corp. v One Beacon Ins. Group*, 8 NY3d 708, 714-715 [2007] [internal quotation marks and citation omitted]). "Thus, the standard for determining whether an additional named insured is entitled to a defense is the same standard that is used to determine if a named insured is entitled to a defense" (*id.* at 715). An insurer's "duty to defend is broader than its duty to indemnify" and arises "whenever the allegations of the complaint suggest . . . a reasonable possibility of coverage" (*Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131, 137 [2006] [internal quotation marks and citation omitted]). Further, " '[i]f any of the claims against [an] insured arguably arise from covered events, the insurer is required to defend the entire action' " (*Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 NY2d 435, 443 [2002], quoting *Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169, 175 [1997]; *see also e.g. Bravo Realty Corp. v Mt. Hawley Ins. Co.*, 33 AD3d 447 [2006]; *Firemen's Ins. Co. of Washington, D.C. v Federal Ins. Co.*, 233 AD2d 193 [1996], *lv denied* 90 NY2d 803 [1997] ["Nor is plaintiff only required to pay the costs of defending the risks specified in its general liability policy, since an insurer's obligation to defend encompasses the entire complaint where, as here, the insurer has any potential indemnity obligations"]; 3 Couch on Insurance 3d § 40:28 ["an insurer has a duty to defend an additional insured in relation to the entire lawsuit, even though the lawsuit may involve both covered and uncovered claims"]). Accordingly, American's duty to defend Sport Rock encompasses all claims asserted against the latter in the *Anaya* action, both claims within the scope of American's potential indemnity obligation under the vendor's endorsement to the Petzl policy (i.e., those claims based on the Petzl harness's allegedly defective design or inadequate labeling) and claims outside the scope of that potential indemnity obligation.

The parties' dispute arises from the fact that Sport Rock's possible liability in the *Anaya* action is potentially covered both (1) by the primary policy issued to it (as a named insured) by Evanston and (2) by the coverage afforded to it under the vendor's endorsement to the primary policy issued to Petzl by

American. Thus, the question arises whether each insurer is obligated to defend Sport Rock concurrently with the other (as American argues) or, alternatively, whether one insurer has the primary defense obligation, with the other's defense obligation arising upon exhaustion of coverage under the first policy (as Sport Rock and Evanston argue, relying on the Evanston policy's "other insurance" clause). We hold that the latter position is correct.

Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective "other insurance" clauses (*see Great N. Ins. Co. v Mount Vernon Fire Ins. Co.*, 92 NY2d 682, 686-687 [1999] [hereinafter, *Great Northern*], citing *State Farm Fire & Cas. Co. v LiMauro*, 65 NY2d 369 [1985]; *see also Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.*, 92 NY2d 363, 372 [1998]). An "other insurance" clause "limit[s] an insurer's liability where other insurance may cover the same loss" (15 Couch on Insurance 3d § 219:1). This may be accomplished by providing that the insurance provided by the policy is excess to the insurance provided by other policies, in which case the "other insurance" clause is known as an excess clause (15 Couch on Insurance 3d § 219:33; 22 Holmes' Appleman on Insurance 2d § 140.2 [B] [1]). Alternatively, an "other insurance" clause may limit the insurer's liability by providing that, if other insurance is available, all insurers will be responsible for a stated portion of the loss; an "other insurance" clause of this kind is known as a pro rata clause (15 Couch on Insurance 3d § 219:27-219:28; 22 Holmes' Appleman on Insurance 2d § 140.2 [A]).

In this case, the applicable "other insurance" clause of the Evanston policy is an excess clause,[3] and the "other insurance" clause of the American policy is a pro rata clause.[4] It is well established under New York law that, where one of two concurrently applicable insurance policies contains an excess "other

---

**3.** As previously indicated, the applicable "other insurance" clause of the Evanston policy provides, in pertinent part, that the policy's coverage is "excess over any valid and collectible insurance available to the insured [Sport Rock] as an additional insured under a policy issued to a manufacturer or distributor for products manufactured, sold, handled or distributed."

**4.** As previously indicated, the "other insurance" clause of the American policy provides, in pertinent part, that, if other primary insurance is available, "we will share with all that other insurance" either by equal shares or in proportion to policy limits.

insurance" clause and the other contains a pro rata "other insurance" clause, the excess clause is given effect, meaning that the coverage under the policy containing the excess clause does not come into play, and the carrier's duty to defend is not triggered, until the coverage under the policy containing the pro rata clause has been exhausted (*see General Acc. Fire & Life Assur. Corp. v Piazza*, 4 NY2d 659, 669 [1958]; *Harleysville Ins. Co. v Travelers Ins. Co.*, 38 AD3d 1364, 1367 [2007], *lv denied* 9 NY3d 811 [2007]; *Firemen's*, 233 AD2d at 193; *see also International Bus. Machs. Corp. v Liberty Mut. Fire Ins. Co.*, 303 F3d 419, 429 [2d Cir 2002] [applying New York law]; *Great Northern*, 92 NY2d at 687; *Pav-Lak Indus., Inc. v Arch Ins. Co.*, 56 AD3d 287, 288 [2008]; *Tishman Constr. Corp. of N.Y. v American Mfrs. Mut. Ins. Co.*, 303 AD2d 323, 324 [2003]).[5] By contrast, where each policy contains an excess "other insurance" clause, so that giving each policy's clause effect would leave the insured without primary insurance, the clauses are deemed to cancel each other out, and the insurers are required to cover the loss on a pro rata basis (*see Great Northern*, 92 NY2d at 687; *Jefferson Ins. Co.*, 92 NY2d at 372; *LiMauro*, 65 NY2d at 373-374; *Federal Ins. Co. v Atlantic Natl. Ins. Co.*, 25 NY2d 71, 75-76 [1969]).

The New York rule giving effect to an excess "other insurance" clause in one of two concurrent policies, where the other policy contains a pro rata "other insurance" clause, conforms to the majority rule throughout the nation (*see* 15 Couch on Insurance 3d § 219:51; 22 Holmes' Appleman on Insurance 2d § 140.3 [B] [2] [a]; 1 Ostrager and Newman, Insurance Coverage Disputes § 11.03 [d] [1] [A], at 907). The reasoning behind the rule is that, because a pro rata clause applies only in the presence of other primary insurance, there is no conflict between a primary policy containing a pro rata clause and a second primary policy containing an excess clause rendering the latter

---

5. It should be added, however, that an excess "other insurance" clause will not render a policy sold as primary insurance excess to a true excess or umbrella policy sold to provide a higher tier of coverage (*see Jefferson Ins. Co.*, 92 NY2d at 372; *LiMauro*, 65 NY2d at 371; *Bovis Lend Lease LMB, Inc. v Great Am. Ins. Co.*, 53 AD3d 140, 142, 148-150 [2008]; *Cheektowaga Cent. School Dist. v Burlington Ins. Co.*, 32 AD3d 1265, 1267-1268 [2006]; 1 Ostrager and Newman, Insurance Coverage Disputes § 11.01, at 892 [14th ed] [although " 'other insurance' clauses may operate to convert a primary policy into an excess policy . . ., insurance purchased as primary coverage must respond to a covered claim before policies specifically purchased as secondary coverage, regardless of the presence of 'other insurance' clauses in the primary policies" (citations omitted)]).

excess to other primary insurance. Moreover, giving effect to the excess clause conforms to the insurers' intent as expressed in their respective policies. As the District of Columbia Court of Appeals has explained:

> "[T]he standard phrase 'other valid and collectible insurance' means other valid and collectible *primary* insurance. It follows, then, that the policy containing the pro rata clause is other valid and collectible primary insurance that triggers application of the excess clause in the second policy. The excess clause in the second policy therefore is given full effect and that carrier is liable only for the loss after the primary insurer had paid up to its policy limits. The policy containing the excess clause, however, is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro rata clause, because when a stated contingency occurs, that is, when there is other valid and collectible primary insurance available to the insured, the policy containing the excess clause becomes secondary coverage only" (*Jones v Medox, Inc.*, 430 A2d 488, 491 [DC 1981]).

Accordingly, giving effect to the Evanston policy's excess "other insurance" clause, Sport Rock's coverage as a named insured under the Evanston policy is excess to Sport Rock's additional insured coverage under the American policy. Hence, Evanston's obligation to defend Sport Rock in the *Anaya* action will not be triggered until Sport Rock's coverage under the American policy has been exhausted or otherwise terminated.[6] And, to reiterate, Sport Rock's coverage under the American policy obligates American to defend every claim against Sport Rock in the *Anaya* action, whether or not it is within the scope of American's potential duty to indemnify Sport Rock.

For the most part, American does not dispute the foregoing principles. Nonetheless, American argues that Evanston is obli-

---

**6.** We do not suggest that American would continue to have a duty to defend Sport Rock in the *Anaya* action in the event all claims within the scope of American's duty to indemnify Sport Rock were dismissed. However, this Court's decision resolving the prior appeal in the *Anaya* action establishes (as previously noted) that the only claims against Sport Rock that remain pending in that lawsuit are based on the allegedly defective design or inadequate labeling of the Petzl harness (*see Anaya*, 44 AD3d at 486-488). Thus, it is evident at this juncture that American will be obligated to indemnify Sport Rock for any judgment against the latter in the *Anaya* action.

gated to share with American the expense of defending Sport Rock because Evanston remained Sport Rock's primary insurer for the now-dismissed claims formerly asserted against Sport Rock in the *Anaya* action that were outside the scope of American's indemnification obligations under the vendor's endorsement to Petzl's policy. The motion court was persuaded by this argument, but we are not.

The hallmark of New York's approach to "other insurance" issues is the "recogni[tion of] the right of each insurer to rely upon the terms of its own contract with its insured" (*LiMauro*, 65 NY2d at 373). Thus, in seeking to determine the effect of the Evanston policy's excess "other insurance" clause, our first resort is to the language of that clause, which, to reiterate, is as follows: "The coverage afforded the insured under this Coverage Part will be excess over any valid and collectible insurance available to the insured as an additional insured under a policy issued to a manufacturer or distributor for products manufactured, sold, handled or distributed."

The above-quoted "other insurance" clause of the Evanston policy does not qualify in any way "[t]he coverage afforded the insured under this Coverage Part" to which it applies. Since such coverage includes both a duty to defend and a duty to indemnify, the "other insurance" clause renders *all* such coverage, the duty to defend no less than the duty to indemnify, excess to the referenced other insurance. Similarly, the above-quoted "other insurance" clause plainly states that the coverage provided by the Evanston policy is made excess over "*any* valid and collectible insurance available to the insured as an additional insured" (emphasis added) under a vendor's endorsement to a manufacturer's or distributor's policy. Thus, the clause renders *all* of Evanston's coverage excess over *all* insurance available to the insured under such a vendor's endorsement, including both the other insurer's duties to defend and to indemnify. In this regard, it should be borne in mind that a liability insurance policy "represent[ing] that it will provide the insured with a defense . . . actually constitutes litigation insurance in addition to liability coverage" (*Cook*, 7 NY3d at 137 [internal quotation marks and citation omitted]).

As previously discussed, American's duty to defend Sport Rock extends to all claims asserted against the latter in the *Anaya* action, even those claims that, if reduced to judgment, would fall outside the scope of American's duty to indemnify under the vendor's endorsement to the Petzl policy (i.e., any

claim against Sport Rock based on Sport Rock's own negligence or the alleged defectiveness of a product not manufactured by Petzl). Since the plain terms of the excess "other insurance" clause of the Evanston policy render all of Evanston's coverage obligations excess to all of American's coverage obligations, Evanston's duty to defend Sport Rock in the *Anaya* action is not triggered to any extent—even as to claims not within American's duty to indemnify—until American's duty to defend Sport Rock against all claims in that action has terminated, by reason of exhaustion of limits or otherwise. To hold otherwise would defeat Evanston's reasonable expectations based on its "right . . . to rely upon the terms of its own contract with its insured" (*LiMauro*, 65 NY2d at 373).

In holding Evanston's coverage excess to American's coverage for purposes of the obligation to defend Sport Rock against all claims in the *Anaya* action, we follow this Court's 1996 decision in *Firemen's* (*supra*), a case that American describes as "wrongly decided" while acknowledging that it supports Evanston's position. In *Firemen's*, the two polices at issue were Firemen's general liability policy, which had a pro rata "other insurance" clause, and Federal's directors' and officers' liability policy, which had an excess "other insurance" clause.[7] We analyzed the issues in *Firemen's* as follows:

> "Construing the policies and their 'other insurance' clauses according to the reasonable expectation of an ordinary businessperson making an ordinary business contract, the IAS Court properly deter-

---

**7.** Although the *Firemen's* decision does not fully spell out the terms of the Firemen's policy's "other insurance" clause, the record of that appeal shows that the Firemen's policy contained a pro rata "other insurance" clause generally similar to that of the American policy in this case. Specifically, under the "other insurance" clause of the Firemen's policy in the earlier case, as under the American policy here (*see* footnote 2 above), the insurer agreed to "share [coverage] with all that other [primary] insurance" available to the insured, except under certain conditions (none satisfied in the case at bar) that would render the policy excess to the other primary insurance. The *Firemen's* record also shows that the Federal policy in that case contained an excess "other insurance" clause, which provided in pertinent part:

> "If any Loss arising from any claim made against the Insured is insured under any other valid policy(ies), prior or current, then this policy shall cover such Loss . . . only to the extent that the amount of such Loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such insurance is written only as specific excess insurance over the limits provided in this policy."

mined [Federal] to be an excess insurer, where, as here, a loss, including defense costs, can be covered by another policy [i.e., the Firemen's policy]. *Nor is [Firemen's] only required to pay the costs of defending the risks specified in its general liability policy, since an insurer's obligation to defend encompasses the entire complaint where, as here, the insurer has any potential indemnity obligations*" (233 AD2d at 193 [emphasis added and citations omitted]).

On those grounds, we affirmed the judgment "declar[ing] that [Federal] was not obligated as a primary insurer to defend the underlying actions" (*id.*). Here, the same reasoning leads to the conclusion that Evanston will not be obligated to defend Sport Rock in the *Anaya* action until American's coverage has been exhausted.[8]

In arguing for a contrary result, American relies on *General Motors Acceptance Corp. v Nationwide Ins. Co.* (4 NY3d 451 [2005] [hereinafter, *GMAC*]). Such reliance is misplaced. True, *GMAC* did direct an allocation of defense costs between two primary policies even though "one [was] excess to the other by reason of competing 'other insurance' provisions" (*id.* at 453). As noted in the decision's opening paragraph, however, crucial to that result was the circumstance that "the excess carrier [Fireman's] ha[d] *voluntarily* assumed and marshaled the insured's [i.e., GMAC's] defense" (*id.* [emphasis added]) upon tender by Nationwide, which had issued a primary automobile liability policy for a leased vehicle that covered GMAC (the lessor) as an additional insured. The Court of Appeals explained later in the opinion that, "[i]n assuming the defense, Fireman's triggered its own duty to defend the action" (*id.* at 456). By contrast, Evanston, the excess carrier in this case, promptly tendered the insured's defense to American, the primary carrier, and Evanston only proceeded to conduct that defense after the tender was rebuffed. Thus, Evanston, unlike the excess carrier in *GMAC*, did nothing to trigger its duty to defend Sport Rock before that duty otherwise would have arisen.

---

**8.** *See also Federal Ins. Co. v St. Paul Fire & Mar. Ins. Co./Saint Paul Mercury Ins. Co.*, 985 F2d 979, 980 (8th Cir 1993), *affg* 1992 US Dist LEXIS 1224 (WD Mo 1992) (holding, under Missouri law, that an insurer [St. Paul] whose policy had a pro rata "other insurance" clause was required to bear the entire cost of defending the insured in a suit alleging defamation and antitrust claims without contribution from a second insurer [Federal] whose policy had an excess "other insurance" clause, although Federal's policy covered both defamation and antitrust liability and St. Paul's policy covered only defamation liability).

Our conclusion that *GMAC* does not control the instant case is reinforced by another factor distinguishing this case from *GMAC*'s particular circumstances. The "other insurance" clause of the Fireman's policy in *GMAC* (*see* 4 NY3d at 454) rendered the Fireman's policy excess to other insurance of all kinds, not other insurance of a specific kind, as is true of the "other insurance" clause of the Evanston policy applicable here. Again, the latter clause applies only to coverage afforded Sport Rock as an additional insured under the vendor's endorsement to a policy issued to a manufacturer or distributor. Thus, the Evanston policy's "other insurance" clause made the policy excess to the particular kind of other insurance afforded Sport Rock by the American policy. This indicates that Evanston, in issuing Sport Rock's policy, did not contemplate assuming on a primary basis the risk of liability arising from Sport Rock's acting as a vendor of products (such as the Petzl harness) manufactured or distributed by other firms, an expectation that presumably was reflected in the premium charged for the policy. In sum, the express exclusion of a particular class of risks from primary coverage under the terms of the Evanston policy's excess "other insurance" clause further distinguishes this case from *GMAC*.

We recognize that *GMAC* arguably could be read as a departure from prior case law giving effect to one policy's excess "other insurance" clause where another concurrent policy contains a pro rata "other insurance" clause. We are persuaded not to read *GMAC* as such a departure, however, by the Court of Appeals' express "reject[ion of] Nationwide's position . . . that an equitable allocation between a primary and excess insurer must be realized [in all cases]," immediately followed by the Court's statement that it was "hold[ing] *only* that, *under the circumstances of this case*, both insurers should be required to share defense costs" (4 NY3d at 457-458 [emphasis added]). Accordingly, we do not believe that the Court of Appeals intended *GMAC* to control cases, like this one, that present significantly different circumstances. Indeed, *GMAC*, by limiting its holding to the particular circumstances of that case, including the excess carrier's voluntary assumption of the defense, and by specifically rejecting Nationwide's broader position, inferentially supports Evanston's position here.[9]

Recently, and after this appeal was submitted, a different panel of this Court decided another case raising a somewhat

---

**9.** Also unavailing is American's reliance on *Cordial Greens Country Club v Aetna Cas. & Sur. Co.* (41 NY2d 996 [1977]), which, in holding that two

similar issue relating to the defense obligations of a primary insurer whose policy, like Evanston's, contained an excess "other insurance" clause. In *Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.* (61 AD3d 185 [2009]), the insureds (a property owners association and certain of its directors and officers) were defended by Hermitage, the association's CGL carrier, in two underlying actions in which the insureds were sued for alleged interference with various rights of another property owner and for publishing alleged "injurious falsehood[s]." Hermitage, pointing out that its policy covered, at most, only the injurious falsehood claims, sought reimbursement of its defense costs from Federal, the insureds' directors' and officers' liability (D&O) carrier, whose policy covered at least some of the other claims in the underlying actions in addition to the injurious falsehood claims. Federal argued that Hermitage was required to bear all defense costs up to its policy limit because the Federal policy had an excess "other insurance" clause, while the Hermitage policy had a pro rata "other insurance" clause. Nonetheless, this Court held:

> "Hermitage is entitled to contribution from Federal for Federal's equitable share of all the defense costs incurred by Hermitage, except for the costs Hermitage incurred in defending against the injurious falsehood claims if those claims are covered by both policies or are covered solely by the [Hermitage] CGL policy" (61 AD3d at 192).

Thus, the *Fieldston* court applied the Federal policy's excess "other insurance" clause only to the defense of the injurious falsehood claims to the extent such claims were covered by both policies, not to the defense of the claims based on interference with property rights covered only by Federal.

In deciding *Fieldston*, this Court found it significant that "the [Hermitage] CGL and [Federal] D&O policies do not provide concurrent coverage as they do not insure against the same risks" (61 AD3d at 191). This appears to refer to the fact that the Hermitage policy covered the claims against the insureds for injurious falsehood but none of the claims for interference with property rights, at least some of which were covered by the Federal policy. Evidently, the injurious falsehood claims, on the one hand, and the property-interference claims, on the other hand, sought recovery for different alleged losses,

---

insurers shared the duty to defend the insured in an underlying personal injury action, did not even mention the policies' "other insurance" clauses.

representing entirely different risks. Thus, since "other insurance" principles govern "where two or more insurance policies cover the same risk" (*Great Northern*, 92 NY2d at 686-687), the Federal policy's excess "other insurance" clause arguably did not apply to the property-interference claims in the actions underlying *Fieldston*, which claims (unlike the injurious falsehood claims) represented losses of a kind not covered by the Hermitage policy.[10]

The concurrence suggests that *Fieldston* may be distinguished from the instant case insofar as the result in *Fieldston* was based on the concept that two policies constitute "other insurance" with respect to each other only to the extent that they "cover [the same insured for] the same risk" (*Great Northern*, 92 NY2d at 686-687, citing Ostrager and Newman, Insurance Coverage Disputes § 11.01, at 581 [9th ed]; *see also* 15 Couch on Insurance 3d § 219:14). That condition, although found not to have been satisfied in *Fieldston*, is plainly satisfied here, where the two policies, notwithstanding their differences in scope, covered the same risk of liability for "bodily injury." While certain of the theories of recovery formerly asserted against Sport Rock in the *Anaya* action were not within the scope of American's duty to indemnify Sport Rock, all claims that have been asserted in that lawsuit seek recovery for precisely the same loss, one plainly constituting a covered "bodily injury" under both the American policy and the Evanston policy. We reject American's argument that, to the extent its duty to indemnify Sport Rock does not extend to all theories of recovery asserted in the *Anaya* action, its policy and that of Evanston cover risks sufficiently different to render the Evanston policy's excess "other insurance" clause inapplicable. "The rule that the risks be identical in order for an 'other insurance' clause to apply does not mean that the total possible coverage under each policy be the same, but merely that with respect to the harm which has been sustained there be coverage under both policies" (15 Couch on Insurance 3d § 219:14; *see also id.* § 219:17 ["For the purposes of an 'other insurance' clause, it is sufficient

---

**10.** As this Court also noted in *Fieldston*, the two policies at issue in that case also clearly covered different risks to the extent their respective periods of coverage did not overlap (*see* 61 AD3d at 191-192 n 2; *see also Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 223 [2002] [" 'other insurance' clauses . . . apply when two or more policies provide coverage during the same period"]). In this case, it is undisputed that Sport Rock was covered by both policies at issue when Anaya's accident occurred and when the claim arising from that accident was first made against Sport Rock.

that both policies provide overlapping coverage for the risk involved"]).

Inasmuch as the Evanston and American policies covered Sport Rock for the same risk, the resolution of this appeal does not require further discussion of the rights and obligations inter se of two or more liability carriers, each covering the same insured for a different risk, whose coverage is implicated in the same litigation. To the extent, if any, *Fieldston* may be read to address the situation presented here (i.e., in which a lawsuit implicates the coverage of two policies covering the same insured for the same risk), we respectfully decline to follow it, recognizing that any conflict ultimately will have to be resolved by the Court of Appeals. The *Fieldston* opinion takes the position that its result is inconsistent with *Firemen's* (*supra*) (a case cited with approval by the Court of Appeals in *GMAC* [4 NY3d at 456]) and expressly "refuse[s] to follow our decision in *Firemen's*" (*Fieldston*, 61 AD3d at 195) for what are, in our view, insufficient reasons. We disagree with the *Fieldston* opinion's assertion that the result in *Firemen's* "is not supported by the plain language of the 'other insurance' clause in that case" (61 AD3d at 195) .[11] Moreover, we find that the two more recent decisions cited in *Fieldston* as support for abandoning *Firemen's* have no bearing on the vitality of the *Firemen's* holding. One of those decisions, *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.* (*supra*), in the course of addressing the issue of allocation of coverage for a continuous loss among successive policies (98 NY2d at 221-225) (an issue not presented either here or in *Firemen's*), mentioned "other insurance" clauses only by way of noting that such "clauses have nothing to do with this determination" (*id.* at 223). The other decision, *Fireman's Fund Ins. Co. v Abax, Inc.* (12 AD3d 277 [2004]), simply held that the excess "other insurance" clause relied upon by the insurer claiming excess status in that case was not implicated in the underlying personal injury action because that clause was part of the subject policy's property coverage section, not its liability coverage section (*see id.* at 278).

Our concurring colleague, while reaching the same conclusion we do in this case, asserts that we "unnecessarily" challenge the validity of the *Fieldston* holding because, in his view, *Fieldston* is distinguishable from the instant case on the grounds discussed above. We welcome the attempt by the concurrence to

---

**11.** The pertinent language of the "other insurance" clauses of the two policies at issue in *Firemen's* is set forth in footnote 7 above.

harmonize the unanimous result here with the result in *Fieldston*, and, to reiterate, we do not challenge the specific result reached in *Fieldston* on the particular set of facts presented in that case. We cannot close our eyes, however, to the aspects of the *Fieldston* opinion that arguably represent a departure from the "settled law" we are following (as the concurrence acknowledges) in deciding this appeal. In this regard, we point to the position apparently taken in *Fieldston* that Hermitage's duty to defend the insured against a claim outside the scope of its duty to indemnify did not constitute other insurance for purposes of the Federal policy's excess "other insurance" clause (*see* 61 AD3d at 191 n 1). Moreover, *Fieldston* expressly rejected this Court's precedent in *Firemen's* without relying on any theory that the carriers in *Firemen's* covered different risks (*see* 61 AD3d at 195); in other words, the *Fieldston* opinion appears to regard *Firemen's* as wrongly decided whether the policies at issue in *Firemen's* covered the same risk or different risks.

Our concern that *Fieldston* represents a departure from precedent is compounded by the policy arguments it offers in support of its determination to require the excess carrier to share in defense costs (*see* 61 AD3d at 193-194), which arguments do not appear to be limited to cases where the policies at issue insure against different risks. Since this bench unanimously considers our resolution of the instant appeal to be required by settled law, we have no occasion to respond to *Fieldston*'s policy arguments. We observe, however, that our present decision is consistent with the public policy favoring the enforcement of contractual agreements, including insurance policies, in accordance with their terms so as to give effect to " 'the reasonable expectation and purpose of the ordinary business [person] when making an ordinary business contract' " (*BP A.C. Corp.*, 8 NY3d at 716, quoting *Album Realty Corp. v American Home Assur. Co.*, 80 NY2d 1008, 1010 [1992]). Moreover, our adherence to settled law in deciding this appeal furthers the goals of "[c]larity and predictability," which "are particularly important in the interpretation of contracts" (*Moran v Erk*, 11 NY3d 452, 457 [2008]), to the end that "parties [engaged in commercial dealings] may intelligently negotiate and order their rights and duties" (*Matter of Southeast Banking Corp.*, 93 NY2d 178, 184 [1999]; *see also Maxton Bldrs. v Lo Galbo*, 68 NY2d 373, 381 [1986] ["when contractual rights are at issue, where it can reasonably be assumed that settled rules are necessary and necessarily relied upon, stability and adherence to precedent are gen-

erally more important than a better or even a 'correct' rule of law'' (some internal quotation marks and citation omitted)]).

Since we conclude that Sport Rock's coverage under the Evanston policy is excess to its coverage under the American policy for purposes of the defense of the *Anaya* action, no question arises of the allocation of the costs of defending that lawsuit between the two carriers. American will be required to fund Sport Rock's defense, without contribution from Evanston, until American's coverage has been exhausted, whereupon Evanston will be required to take over the defense (*see GMAC*, 4 NY3d at 456 [''a primary insurer has a duty to defend 'without any entitlement to contribution from an excess insurer' '' (quoting *Firemen's*, 233 AD2d at 193)]). Further, Evanston is entitled to reimbursement from American for all costs Evanston has heretofore reasonably incurred in defending Sport Rock in the *Anaya* action. If American believes that insurers other than Evanston may owe Sport Rock primary coverage in the *Anaya* action, American may seek contribution from such insurers.

### Duty to Indemnify

As previously noted, on an appeal in the *Anaya* action, this Court ruled that the only remaining viable claims against Sport Rock in that suit are based on the theories that the Petzl harness was defectively designed and that it failed to include warning labels necessary to render it safe (*Anaya*, 44 AD3d at 486-488). Specifically, the motion court had granted both Sport Rock and Petzl summary judgment dismissing Joseph Anaya's complaint as against them (*id.* at 485). On Anaya's appeal, we modified the motion court's order to reinstate the claims against Sport Rock and Petzl, but only insofar as based on the contention that ''the alleged defective design of the harness, the alleged inadequate warnings [on the harness], or both, was a substantial factor in causing plaintiff's injuries'' (*id.* at 488). Thus, at this point in the litigation, it is clear that any judgment that may be rendered against Sport Rock in the *Anaya* action will fall within the scope of American's duty to indemnify Sport Rock as an additional insured under the vendor's endorsement to Petzl's policy, which affords Sport Rock coverage for a ''bodily injury . . . arising out of [Petzl's] products . . . which are distributed or sold in the regular course of [Sport Rock's] business'' (internal quotation marks omitted). Accordingly, we grant Sport Rock summary judgment declaring that American will be obligated to indemnify Sport Rock, up to the limits of

Sport Rock's coverage under the American policy, for any judgment against Sport Rock in the *Anaya* action. American's argument that we should not take notice of this Court's own published decision in the *Anaya* action is without merit.

Accordingly, the order of the Supreme Court, New York County (Debra A. James, J.), entered August 27, 2007, which granted plaintiffs' motion for summary judgment to the extent of declaring that defendant American is obligated to defend plaintiff Sport Rock in the *Anaya* action, and otherwise denied the motion, should be modified, on the law, to further declare that the coverage afforded Sport Rock in the *Anaya* action under the policy issued to it by plaintiff Evanston is excess over the primary coverage afforded Sport Rock therein as an additional insured under the policy American issued to nonparty Petzl, that Evanston will not be obligated to contribute to Sport Rock's defense or indemnification in the *Anaya* action until Sport Rock's coverage from American has been exhausted, and that American is obligated to reimburse Evanston up to the applicable limit of American's policy for all costs Evanston has heretofore incurred in defending Sport Rock in the *Anaya* action, and otherwise affirmed, with costs in favor of Sport Rock and Evanston payable by American.

SAXE, J. (concurring). I agree with the majority that the insurance coverage afforded to plaintiff Sport Rock International, Inc., under the commercial general liability policy issued to it by Evanston Insurance Company is excess to the primary coverage afforded to Sport Rock as an additional insured under the commercial general liability policy issued by American Casualty to nonparty Petzl. Accordingly, I concur in the resulting holding that Evanston is not obligated to contribute to Sport Rock's defense or indemnification in the underlying personal injury action until American's coverage has been exhausted and that American must reimburse Evanston for costs it has incurred in the defense. I part company to the extent the majority opinion challenges—unnecessarily—the validity of this Court's recent holding in *Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.* (61 AD3d 185 [2009]).

The underlying claims at issue against Sport Rock are for bodily injury incurred while wall climbing at a sports club, using a safety harness manufactured by Petzl. The insurance policy issued to Petzl by American Casualty contains a vendor's endorsement providing primary coverage to vendors of the prod-

uct such as plaintiff Sport Rock, as additional insureds, for claims of bodily injury based upon alleged defects in Petzl's products. Evanston, plaintiff's own insurer, similarly provides coverage for claims of bodily injury against the insured. Evanston's policy contains the following "other insurance" clause:

> "When [Sport Rock is] added to a manufacturer's or distributor's policy as an additional insured because [it is] a vendor for such manufacture[r]'s or distributor's products . . .

> "The coverage afforded [Sport Rock] under this Coverage Part will be excess over any valid and collectible insurance available to the insured as an additional insured under a policy issued to a manufacturer or distributor for products manufactured, sold, handled or distributed."

In contrast, as the majority observes, the "other insurance" provision of American Casualty's policy provides that if other primary insurance is available, American Casualty will share coverage.

Under the settled law of this state, to the extent *the same risk* is covered by two primary policies, the two insurers' respective defense and indemnification obligations are determined by reference to each of the policies' "other insurance" provisions (*see Great N. Ins. Co. v Mount Vernon Fire Ins. Co.*, 92 NY2d 682, 686-687 [1999]). This rule unquestionably applies here, where the two policies both cover the risk of the bodily injury alleged in the complaint; so Evanston, whose "other insurance" clause amounts to an excess clause, must be treated as an excess insurer (*see Harleysville Ins. Co. v Travelers Ins. Co.*, 38 AD3d 1364 [2007], *lv denied* 9 NY3d 811 [2007]).

This Court's recent decision in *Fieldston Prop. Owners (supra)* is not in conflict with this ruling or the settled law on which it is based. There, the two insurance policies at issue did *not* cover the same risk: one commercial general liability carrier covered only an underlying injurious falsehood claim, while the insured's directors' and officers' liability policy covered claims for interference with property rights. The crux of the analysis in *Fieldston* was that—unlike the circumstances here—the two policies *did not insure against the same risks*, rendering inapplicable the settled law regarding two primary insurance carriers covering the same risk, and the import of their respective "other insurance" provisions. We therefore properly ordered an equitable sharing of the defense costs between the carriers in *Fieldston*.

Since the circumstances in *Fieldston* are distinguishable from those presented here, there is no need to analyze or criticize its reasoning. To the extent the majority discusses and disapproves of the reasoning in *Fieldston*, I disagree with the majority opinion.

TOM, J.P., and BUCKLEY, J., concur with FRIEDMAN, J.; SAXE and CATTERSON, JJ., concur in a separate opinion by SAXE, J.

Order, Supreme Court, New York County, entered August 27, 2007, modified, on the law, to further declare that the coverage afforded Sport Rock in *Anaya v Town Sports Intl., Inc.* under the policy issued to it by plaintiff Evanston is excess over the primary coverage afforded Sport Rock therein as an additional insured under the policy American issued to nonparty Petzl, that Evanston will not be obligated to contribute to Sport Rock's defense or indemnification in the *Anaya* action until Sport Rock's coverage from American has been exhausted, and that American is obligated to reimburse Evanston up to the applicable limit of American's policy for all costs Evanston has heretofore incurred in defending Sport Rock in the *Anaya* action, and otherwise affirmed, with costs in favor of Sport Rock and Evanston payable by American.