24-1598
*County of Ulster, et al. v. Alliance of Nonprofits*
*for Insurance Risk Retention Group, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of April, two thousand twenty-five.

PRESENT:

        ROBERT D. SACK,
        BETH ROBINSON,
           *Circuit Judges,*
        JOHN G. KOELTL,
           *District Judge.*[*]

---

COUNTY OF ULSTER, NEW YORK STATE LOCAL
GOVERNMENT SERVICES FOUNDATION INC., as
attorney-in-fact for New York Municipal
Insurance Reciprocal, NEW YORK MUNICIPAL
INSURANCE RECIPROCAL,

        *Plaintiffs-Counter-Defendants-*
        *Counter-Claimant-Appellees,*

        v.                No. 24-1598

---

[*] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

ALLIANCE OF NONPROFITS FOR INSURANCE RISK
RETENTION GROUP,

   *Defendant-Counter-Claimant-*
   *Appellant,*

JEWISH FAMILY SERVICES OF ULSTER COUNTY,
INC., JOYCE A. NORTHACKER,

   *Defendants.*

_____

FOR APPELLANT:       GLENN A KAMINSKA, Mauro Lilling
               Naparty, LLP, Woodbury, NY

FOR APPELLEE:       MICHAEL T. REAGAN, Congdon, Flaherty,
               O'Callaghan, Fishlinger & Pavlides,
               Uniondale, NY

Appeal from a judgment of the United States District Court for the Northern District of New York (Hurd, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 15, 2024, is **AFFIRMED** in part, and **VACATED** in part.

Defendant-Counter-Claimant-Appellant Alliance of Nonprofits for Insurance Risk Retention Group ("ANI") appeals the district court's judgment granting summary judgment for Plaintiffs-Counter-Defendants-Counter-Claimant-Appellees County of Ulster (the "County"), New York State Local Government Services Foundation Inc., as attorney-in-fact for New York Municipal

Insurance Reciprocal, and New York Municipal Insurance Reciprocal. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

In January 2018, Barbara Hyde was driving Joyce Northacker to a medical appointment through the County's Senior Transportation Program ("the Program"). Hyde lost control of the car and collided head on with a County-owned bus. Hyde died as a result of her injuries, and Northacker was injured. In a separate action in state court (the "*Northacker* action"), Northacker sued the County, Jewish Family Services of Ulster County ("JFS"), and the driver of the bus to recover for her injuries.

The County then brought this action against ANI, JFS, and Northacker seeking a declaratory judgment that JFS's Risk Retention Group Policy (the "ANI Policy") covers the County's liability in the *Northacker* action. ANI counterclaimed seeking a declaration that it does not. On the parties' cross-motions, the district court granted summary judgment for the County. *County of Ulster v. Alliance of Nonprofits for Insurance Risk Retention Group*, No. 1:21-cv-524, 2024 WL 98353, at *11 (N.D.N.Y. Jan. 9, 2024).

3

We review the district court's grant of summary judgment without deference to the district court. *Byrne v. Rutledge*, 623 F.3d 46, 52 (2d Cir. 2010). Summary judgment is proper if, construing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* ANI argues on appeal that the district court erred by concluding that the County was an insured under the ANI Policy and that the ANI Policy is primary to the County's insurance. We address each contention in turn.

## I.     The County's Status as an Insured

The County contends that 1) at the time of the accident, Hyde was an insured JFS volunteer for purposes of the ANI Policy, and 2) as a consequence, the ANI Policy treats the County as an "insured" to the extent of its liability resulting from Hyde's conduct. ANI disputes both claims, arguing that 1) Hyde was a volunteer of the *County*, and 2) even if she was a covered insured under the ANI Policy, *the County* is not therefore covered. We agree with the County on both points.

The Business Auto Coverage in the ANI Policy covers "all sums an 'insured' legally must pay because of 'bodily injury' or 'property damage' to which this

4

insurance applies, caused by an 'accident' . . . ." App'x 567.  By endorsement, the definition of "insured" includes "[a]nyone volunteering services to [JFS] . . . while using a covered 'auto' [JFS doesn't] own, hire or borrow to transport [JFS] clients or other persons in activities necessary to [JFS's] business."  App'x 600.  Thus, Hyde's status as an "insured" turns on whether she was "volunteering services" to JFS at the time of the accident.

We conclude that she was.  The relationship between the County, JFS, and the Program for which Hyde was volunteering is defined in an "Agreement for Professional Services" (the "Agreement") between the County and JFS.  Under the Agreement, JFS was to provide transportation services to seniors "in collaboration with" the County.  App'x 157.

The Agreement unambiguously establishes that the drivers were JFS volunteers, even if they *also* acted as volunteers for the County.  For its part of the collaboration with the County, JFS assumed certain administrative responsibilities, including developing a job description for volunteer drivers, helping recruit and train volunteers, ensuring that volunteer drivers have valid and "clean" New York State drivers' licenses, ensuring that the volunteers' vehicles are properly licensed, registered, insured, and maintained, and managing

5

mileage reimbursement to the volunteer drivers. The Agreement also required JFS to maintain insurance for the Program.

The Agreement refers to volunteers as "*the Agency's*" volunteers—as in *JFS's* volunteers—in several places. App'x 157 (emphasis added). Counter to ANI's argument, the fact that the Agreement sometimes refers to "the Agency's volunteer drivers," and sometimes just refers to "volunteers" does not introduce an ambiguity as to the Agreement's meaning. Read as a whole, the Agreement doesn't suggest that there are two different categories of volunteers, and it identifies the Program's volunteers as "*the Agency's*" volunteers. *See*, *e.g.*, App'x 157, § 1.3 ("The Agency's Volunteer drivers shall not solicit nor accept tips."); § 2.1 ("The Agency's volunteer drivers . . . shall possess a current, valid, and clean New York State driver's license.").

And we reject ANI's argument that the County abandoned the Agreement through its conduct. In New York, "[t]o establish abandonment of a contract by conduct, it must be shown that the conduct is mutual, positive, unequivocal, and inconsistent with the intent to be bound." *EMF Gen. Contracting Corp. v. Bisbee*, 6 A.D.3d 45, 49–50 (N.Y. App. Div. 1st Dep't 2004); *see also Aliperti v. Laurel Links, Ltd.*, 27 A.D.3d 675, 676 (N.Y. App. Div. 2d Dep't 2006) ("A contract will be treated

6

as abandoned when one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior.").[1] It is undisputed that JFS accepted fees for administering the program, JFS maintained the required insurance, and the parties fully renewed the Agreement in 2018.

Evidence that the County assumed several of JFS's assigned duties under the Agreement establishes, at most, that the County took actions inconsistent with some of the terms of the Agreement. That is neither "unequivocal" nor "inconsistent with the intent to be bound," particularly when the parties entered into an updated agreement effective days before the accident. *EMF Gen. Contr. Corp.*, 6 A.D.3d at 49. Because the record doesn't evidence "clear, affirmative conduct" by either party "that is entirely at odds with the contract," ANI has not met his burden to establish abandonment of the Agreement. *Id.* at 50.

Because the Agreement unambiguously establishes that the drivers are JFS volunteers, we conclude that Hyde was a JFS volunteer and therefore, was an insured within the meaning of the ANI Policy. *See Goldman v. White Plains Center for Nursing Care, LLC*, 896 N.Y.2d 173 (2008) ("Thus, a written agreement that is

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

7

complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms, without reference to extrinsic materials outside the four corners of the document.").

Having concluded that *Hyde* was an insured, we also conclude that under the Policy the County was an insured to the extent it was liable for Hyde's actions. The ANI Policy identifies three categories of insureds: subsection (a), which defines JFS as an insured; subsection (b), which relates to anyone using with JFS's permission an auto JFS owns, hires or borrows, with various exceptions; and subsection (c) which defines an insured as, "[a]nyone liable for the conduct of an insured described above but only to the extent of that liability." App'x 567–68. And, as noted above, a separate endorsement extends coverage to JFS volunteers using for JFS business purposes, vehicles that JFS does not own and has not hired or borrowed.

The County contends it is covered under subsection (c) because it is liable for the conduct of an insured—namely, Hyde. ANI argues that because subsection (c) only extends coverage to a person liable for the conduct of "an 'insured' described *above*," it does not include as an insured anyone who is liable for the conduct of someone defined as an "insured" by endorsement rather than in

8

subsections (a) or (b). But the endorsement expressly adds volunteers like Hyde to the "Who is an insured" provision on the same footing with the other categories of insureds. Thus, the only reasonable reading of subsection (c) is that it expands coverage to anyone who is liable for the conduct of an insured under the policy, including those defined as an insured by endorsement. For these reasons, we conclude that the County is an insured under the policy.[2]

## II.  Priority of Insurance Policies

New York Municipal Insurance Reciprocal issued the County a separate insurance policy (the "NYMIR Policy"). The NYMIR Policy contains automobile liability coverage for any amount an insured must pay because of an accident that

---

[2] ANI also argues (1) that the County is estopped from arguing that Hyde was a JFS volunteer and that (2) an agreement between JFS and the County not to hold Hyde's estate or her insurer liable for payments in excess of the $300,000 paid by her insurer renders any dispute as to Hyde's coverage moot. Neither argument has merit. In a prior action in state court, the County argued that Hyde was a County volunteer employee. Even if that estopped the County from denying that Hyde was a County volunteer, it would not estop her from arguing that Hyde was *also* a JFS volunteer. The state court came to the same conclusion in the underlying action. *See Northhacker v. County of Ulster*, 212 A.D.3d 86, 91 (N.Y. App. Div. 3d Dep't 2022) (stating that JFS could also be held liable for Hyde's conduct because a person could be deemed to have more than one employer or principal). And the arbitration agreement's release of claims against Hyde is of no moment because the issue is not about whether Hyde is liable, but rather, whether she is an insured under the ANI Policy. And we decline to consider counsel's argument that the arbitrator's decision in the *Northhacker* case definitively established that Hyde was *not* a JFS volunteer. Counsel specifically articulated this position for the first time at oral argument; it is not explicitly set forth in ANI's brief. We normally "will not consider arguments raised for the first time at or after oral argument" and decline to do so here. *See United States v. Quinones*, 317 F.3d 86, 90 n.2 (2d Cir. 2003).

results in bodily injury or property damage. It is undisputed that Hyde's personal insurance provides the first layer of coverage. The parties, however, dispute whether the ANI Policy provides the next layer of coverage, or whether it is co-excess with the NYMIR Policy.

In New York, "[w]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage . . . priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses." *Sport Rock Intl., Inc. v. American Cas. Co. of Reading, Pa.*, 65 A.D.3d 12, 18 (N.Y. App. Div. 1st Dep't 2009). The ANI Policy and the NYMIR Policy contain nearly identical "other insurance" clauses, except that the ANI Policy "is primary for any liability assumed under an 'insured contract.'" App'x 574. It defines an "insured contract" as "that part of any other contract or Agreement pertaining to your business under which you assume tort liability of another to pay damages because of 'bodily injury' or 'property damage' to a third party or organization." App'x 576. The County and the district court concluded that because of the Agreement's indemnification provision it is an insured contract, and therefore, the ANI Policy is primary.

We agree that if the ANI coverage applied by virtue of the indemnification provision in the Agreement, the ANI coverage would be primary. But in light of our analysis above, the County is an "insured" under the terms of the ANI Policy itself; its status as an "insured" under the ANI Policy is independent of any potential right of indemnification from JFS pursuant to the Agreement.[3] Because the liability at issue doesn't involve "liability assumed under an 'insured contract'" that is part of an agreement "other" than the ANI Policy, the ANI Policy and the NYMIR Policy are co-excess.[4]

\* \* \*

---

[3] The County's complaint in this action includes a claim for coverage under the ANI Policy "if the County is successful in its crossclaim against JFS for contractual indemnification" in the *Northacker* action. App'x 85. But the arbitrator in the *Northacker* action did not reach the question of contractual indemnification, and the parties subsequently discontinued the case.

[4] ANI also argued that because the County only asked for fifty-fifty coinsurance in its complaint, the district court erred by providing it with more relief than what it sought. Because we conclude the district court erred in concluding that the ANI Policy is primary to the NYMIR Policy, we need not reach this question.

For the reasons stated, the District Court's judgment is **AFFIRMED** in part, **VACATED** in part, and **REMANDED** to the district court for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court