*684
 
 OPINION OF THE COURT
 

 Wesley, J.
 

 This case presents us with a certified question from the United States Court of Appeals for the Second Circuit regarding the appropriate interpretation of the phrase “similar coverage for ‘your work,’ ” contained in an excess coverage provision of an “other insurance” clause of a standard Commercial General Liability (CGL) insurance policy.
 

 Plaintiffs Great Northern Insurance Company and its insured, Linn Howard Selby, commenced an action in Federal court to determine Great Northern’s responsibility for defense and indemnification of Selby in a personal injury action brought by a carpenter who was injured while doing work at her cooperative apartment. The District Court held that the two insurance policies in question — a standard homeowner’s policy issued by Great Northern and a CGL policy issued by the Mount Vernon Fire Insurance Company insuring the William Monier Construction Company, Selby’s general contractor — were excess to each other with respect to their coverage for the incident. Finding the issue to be open, the Court of Appeals certified the following question to our Court:
 

 “[W]hether the phrase ‘similar coverage for “your work” ’ in the excess coverage provision of the ‘other insurance’ clause of a commercial general liability policy renders that policy’s coverage excess to the third-party liability coverage provided by a homeowner’s policy (which is concededly excess with respect to the commercial general liability policy), such that the two insurers must bear pro rata shares of the cost of defending and indemnifying a homeowner in the event that a third party is injured while performing construction renovation work on the home.” (143 F3d 659, 662.)
 

 We answer the certified question in the negative and hold that the phrase “similar coverage for ‘your work’ ” in the excess coverage provision of the “other insurance” clause of this stan
 
 *685
 
 dard CGL policy refers to first-party property coverage, not third-party liability coverage. Accordingly, the Mount Vernon policy is primary with respect to the Great Northern policy and Mount Vernon bears the initial responsibility for defending and indemnifying Selby for the carpenter’s injury.
 

 I.
 

 As described by the Second Circuit:
 

 “The accident that gave rise to the underlying action occurred when John Hlavaty, a carpenter doing renovation work on Selby’s cooperative apartment, was injured at the job site. Hlavaty claims to have been an independent contractor performing work on behalf of [Monier], a general contractor that Selby hired to do the renovations. As part of Selby’s contract with Monier, Monier agreed to defend Selby, indemnify her, and hold her harmless for any personal injuries or property damage that arose out of the construction work. Monier also agreed to obtain general liability insurance to cover the work, and to name Selby as an additional insured on the policy. Accordingly Monier procured such coverage (in the form of a standard [CGL] policy) from Mount Vernon. Selby also had her own insurance, a standard homeowner’s policy issued by Great Northern.
 

 “Both Great Northern and Mount Vernon concede that their policies cover the subject loss (i.e., they both provide for defense and indemnification of Selby with respect to Hlavaty’s claims against her). But the parties disagree about how the loss should be apportioned between them. Both policies have ‘other insurance’ clauses, which attempt to deal with situations in which multiple policies cover a single loss by specifying when their coverage is ‘primary’ as opposed to ‘excess’ with respect to other applicable coverages. The parties agree that, pursuant to its ‘other insurance’ provision, the Great Northern policy is excess with respect to the Mount Vernon policy. The sole disputed issue is, therefore, whether Mount Vernon’s coverage is primary or excess to Great Northern’s.” (143 F3d 659, 660,
 
 supra.)
 

 
 *686
 
 The Mount Vernon policy is a standard CGL policy, written on a standard Insurance Service Office (ISO) form. The “other insurance” clause of the Mount Vernon policy provides:
 

 “4. Other Insurance.
 

 “If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:
 

 “a. Primary Insurance.
 

 “This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in c. below.
 

 “b. Excess Insurance.
 

 “This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
 

 “(1) That is Fire, Extended Coverage, Builder’s Risk, Installation Risk or similar coverage for ‘your work.’
 

 “(2) That is Fire insurance for premises rented to you; and
 

 “(3) If the loss arises out of the maintenance or use of aircraft, ‘autos’ or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I)” (emphasis added).
 

 The Second Circuit observed: “Mount Vernon’s coverage is primary in most respects, and is excess to other applicable coverages only in a few specifically enumerated situations. It is undisputed that the Great Northern policy is not fire, extended coverage, builder’s risk, or installation risk insurance, and that the subject loss did not involve aircraft, watercraft, or autos. Accordingly, the disposition of this case turns on the meaning of the phrase ‘similar coverage for “your work” ’ in the Mount Vernon policy” (143 F3d 659, 661,
 
 supra).
 
 We accepted the Second Circuit’s certified question which seeks a New York law resolution to this coverage issue and now turn to that task.
 

 II.
 

 In insurance contracts the term “other insurance” describes a situation where two or more insurance policies cover the
 
 *687
 
 same risk in the name of, or for the benefit of, the same person (Ostrager and Newman, Insurance Coverage Disputes, § 11.01, at 581 [9th ed]). When an insured has more than one potentially applicable policy for a claim, courts determine the insurers’ obligations to the insured by applying a body of law developed to resolve “other insurance” disputes
 
 (State Farm Fire & Cas. Co. v LiMauro,
 
 65 NY2d 369). Under New York law, if the Mount Vernon coverage is excess, and hence the two policies are excess to one another, the two “other insurance” clauses cancel each other out and the companies must apportion the costs of defending and indemnifying Selby on a pro rata basis. In contrast, if Mount Vernon’s coverage is primary with respect to Great Northern’s, then Mount Vernon must pay up to the limits of its policy before Great Northern’s coverage becomes effective
 
 (Farm Family Mut. Ins. Co. v Allstate Ins. Co.,
 
 179 AD2d 965, 965-966;
 
 Allstate Ins. Co. v Farmers Ins. Group,
 
 108 AD2d 284, 285,
 
 mod on other grounds
 
 67 NY2d 924).
 

 The District Court determined that the policies had “similar coverage” because each provided liability coverage to Selby for personal injuries arising out of work performed under the Monier contract. The District Court interpreted “your work” to include work done for Selby since Selby was listed as an additional insured on the policy (i.e., the “work” was for an insured). Thus, the court concluded that the Mount Vernon policy was excess to the Great Northern policy.
 

 The analytical approach taken by the District Court mistakenly severed the key phrase from the unambiguous antecedent enumerated coverages. The Mount Vernon policy is excess only to policies that provide fire, extended coverage, builders risk, installation risk or similar coverage for those types of risk.
 

 Thus, a proper interpretation of the phrase “similar coverage for ‘your work’ ” requires us first to classify the types of coverage delineated in section 4 (b) (1) according to the interests protected under the insurance contract. This, in turn, is accomplished by identifying the beneficiary of the insurer’s duty to pay (or indemnify) (1 Holmes, Appleman on Insurance 2d § 3.2, at 343).
 

 Insurance contracts generally are assigned to one of two classes: either “first-party coverage” or “third-party coverage”
 
 (id.).
 
 “First-party coverage” pertains to loss or damage sustained by an insured to its property; the insured receives the proceeds when the damage occurs (1 Holmes,
 
 op. cit.,
 
 at
 
 *688
 
 342). In contrast, if the insurer’s duty to defend and pay runs to a third-party claimant who is paid according to a judgment or settlement against the insured, then the insurance is classified as “third-party insurance”
 
 (id.).
 
 Thus, wholly different interests are protected by first-party coverage and third-party coverage.
 

 The interests protected by the enumerated coverages in section 4 (b) (1) of the Mount Vernon policy protect only property interests. These coverages are specifically categorized as “first-party property insurance” in our jurisprudence
 
 (Album Realty Corp. v American Home Assur. Co.,
 
 80 NY2d 1008;
 
 American Ins. Assn. v Lewis,
 
 50 NY2d 617) and by treatises on insurance law (1 Couch, Insurance 3d §§ 1:37, 1:53
 
 et seq.;
 
 Rubin, Dictionary of Insurance Terms 60, 175, 227 [3d ed 1995]; Deutsch and Kaskell,
 
 Builder’s Risk Insurance,
 
 9 Construction Law 8 [Apr. 1989]; Annotation,
 
 Coverage Under Builder’s Risk Insurance Policy,
 
 97 ALR3d 1270).
 
 *
 
 The interests protected (or risks covered) involve property, not persons. Indeed, the goal of first-party property coverage, including fire, builder’s risk and installation risk, is to reimburse the insured for the insured’s actual property loss, dollar for dollar, but no more.
 

 Thus, read within the context of the enumerated coverages, we interpret ‘.‘similar coverage for your work” to mean first-party property coverage for commercial work. Given that this phrase strictly encompasses first-party property insurance, we are persuaded that it does not include a homeowner’s third-party liability policy. Although a homeowner’s policy like the Great Northern policy may be viewed as a hybrid — it combines aspects of property and liability risks into a single policy (1 Holmes,
 
 op. cit.,
 
 § 1.11, at 57) — the risk at issue in the Hlavaty claim involves strictly injuries sustained while he was working on Selby’s cooperative apartment. Thus, it is the third-party indemnification aspect of the homeowner’s coverage that makes it dissimilar to the enumerated coverages in the Mount Vernon “other insurance” clause. To find the Great Northern policy “similar” to the Mount Vernon policy would confuse the important contractual and practical distinctions between these two coverages.
 

 
 *689
 
 The District Court’s interpretation expanded the excess insurance definition to include any coverage that was similar to that afforded under any portion of the Mount Vernon policy. We conclude that there is no authority in New York to do so
 
 (see, United States Fid. & Guar. Co. v Annunziata,
 
 67 NY2d 229, 232). Our interpretation, moreover, is consistent with that of other States
 
 (Gerrish Corp. v Aetna Cas. & Sur. Co.,
 
 949 F Supp 236 [D Vt];
 
 Gabe’s Constr. Co. v United Capitol Ins. Co.,
 
 539 NW2d 144 [Iowa];
 
 Nationwide Mut. Ins. Co. v Hall,
 
 643 So 2d 551 [Ala];
 
 Woodson v A & M Invs.,
 
 591 So 2d 1345 [La Ct App]) and the industry interpretation of this standard phrase, drawn from a model ISO contract (Gibson, Broad Form Property Damage Coverage [Inti Risk Mgt Inst 2d ed]; Commercial General Liability Insurance [FAIA Continuing Education May 1990]).
 

 Accordingly, the Mount Vernon policy should be read as excess only in specific, enumerated circumstances where first-party property loss coverage would serve as primary indemnification for a loss. That is not presented by this case where Mount Vernon’s coverage is primary because Hlavaty’s claim does not involve one of these specific circumstances.
 

 The Great Northern homeowner’s policy, which provides third-party liability insurance, is not similar to the first-party property coverages enumerated in the Mount Vernon excess clause. Each policy encompasses a different classification of risks and, by extension, each protects against exposure to different liabilities. Here, the damage was not to Selby’s property, i.e., there was no direct diminution of her assets. Rather, the injury was to Hlavaty himself — a classic case of third-party liability coverage.
 

 Accordingly, the certified question should be answered in the negative.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick and Rosenblatt concur; Judge Levine taking no part.
 

 Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.
 

 *
 

 “Extended Insurance” is a generic term for an endorsement added to an insurance policy or a clause found in an insurance policy that will provide additional coverage for risks to be insured other than those covered under the basic policy provisions (Rubin,
 
 op. cit.,
 
 at 156). Here, we interpret “extended coverage” within the context of the first-party property insurance categories listed.