27 So.3d 1210 (2009)
COLONY INSURANCE COMPANY
v.
GEORGIA-PACIFIC, LLC, Lumbermens Mutual Casualty Company, and Industrial Maintenance and Mechanical, Inc.
Georgia-Pacific, LLC
v.
Colony Insurance Company.
1071593 and 1071604.
Supreme Court of Alabama.
July 31, 2009.
*1212 Algert S. Agricola, Jr., of Ryals, Plummer, Donaldson, Agricola & Smith, P.C., Montgomery, for appellant/cross-appellee Colony Insurance Company.
Mack B. Binion and Margaret M. Miller of Briskman & Binion, P.C., Mobile, for appellees/cross-appellants Georgia-Pacific, LLC, and Lumbermens Mutual Casualty Company.
BOLIN, Justice.
Colony Insurance Company ("Colony") appeals from a summary judgment in favor of Lumbermens Mutual Casualty Company ("Lumbermens") and Georgia-Pacific, LLC ("Georgia-Pacific"), in an action filed by Colony, seeking a judgment declaring that Lumbermens was required to defend and indemnify Georgia-Pacific in an underlying lawsuit arising out of the death of Rufus Scott White, an employee of Industrial Maintenance and Mechanical, Inc. (hereinafter referred to as "IMMI"), who was killed while working on the roof at Georgia-Pacific's facility in Cedar Springs, Georgia. Georgia-Pacific and Lumbermens also appeal from a summary judgment in favor of Colony on their counterclaim, alleging that Colony had breached its enhanced obligation of good faith in defending Georgia-Pacific under a reservation of rights. The appeals have been consolidated for the purpose of issuing one opinion. We affirm.

I. Undisputed Facts and Procedural History
Colony issued IMMI a commercial general liability policy of insurance, no. GL113031, that provided annual coverage from September 10, 2001, to September 10, 2002. An endorsement to this policy added as additional insureds "all persons or organizations as required by written contract with the named insured."
On March 28, 2002, IMMI executed a written contract with Georgia-Pacific, whereby IMMI agreed to perform work on the roof of Georgia-Pacific's facility in Cedar Springs, Georgia. After entering into this contract, IMMI added Georgia-Pacific as an additional insured under the Colony policy. Georgia-Pacific was also listed as an "insured" under a commercial general liability policy of insurance it had with Lumbermens, policy no. 5AA045534-00, that provided annual coverage from May 15, 2001, to May 15, 2002.
On April 18, 2002, while both policies were in effect, White, an employee of IMMI, was killed when he fell through the roof of the Georgia-Pacific facility. On July 11, 2002, White's estate sued Georgia-Pacific, IMMI, and fictitiously named parties, alleging negligence, wantonness, and willfulness (hereinafter referred to as "the underlying case"). IMMI was subsequently dismissed from the underlying case after a determination that White was an employee of IMMI's for workers' compensation purposes.
Pursuant to the "additional insured" endorsement in IMMI's policy, Colony defended the underlying case under a reservation of rights. Colony thereafter filed a declaratory-judgment action, naming Georgia-Pacific and Lumbermens as defendants and seeking a determination that the coverage provided under both the Colony policy and the Lumbermens policy was excess coverage and that Lumbermens was required to defend and indemnify Georgia-Pacific in proportion with each insurer's share of the total limits of applicable coverage.
On September 21, 2007, Georgia-Pacific and Lumbermens filed a counterclaim alleging that Colony had breached its enhanced obligation of good faith in defending Georgia-Pacific under a reservation of rights.
*1213 On January 8, 2008, Georgia-Pacific and Lumbermens filed a motion for a summary judgment, contending that the Lumbermens policy was not a policy of insurance[1] and that the coverage provided by the Colony policy was the primary coverage. On February 19, 2008, Colony settled the underlying case. On April 1, 2008, Colony filed a motion for a summary judgment, seeking a judgment on its complaint for a declaratory judgment and on Georgia-Pacific and Lumbermens' counterclaim alleging a breach of the enhanced obligation of good faith. The trial court entered a summary judgment in favor of Lumbermens and Georgia-Pacific on Colony's declaratory-judgment complaint, from which Colony appeals; the trial court entered a summary judgment in favor of Colony on Lumbermens and Georgia Pacific's counterclaim, which alleged a breach of the enhanced obligation of good faith, from which Georgia-Pacific and Lumbermens appeal.

II. Standard of Review
"In reviewing a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is 'substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990). Furthermore, `[i]f the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by summary judgment.' McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala.1991)."
Taylor v. Striplin, 974 So.2d 298, 301 (Ala. 2007).

III. Primary or Excess Insurance
In the instant case, both the Colony policy and the Lumbermens policy contain "other insurance" clauses specifying when their respective coverage is primary coverage as opposed to excess coverage. On appeal, Colony does not dispute Georgia-Pacific and Lumbermens' assertion that coverage under the Lumbermens policy is excess coverage. Instead, Colony argues that because both policies contain excess-insurance clauses, liability for defending the underlying case should be prorated between the two insurers in proportion to each company's share of the total limits of applicable coverage, citing State Farm Mutual Automobile Insurance Co. v. General Mutual Insurance Co., 282 Ala. 212, 210 So.2d 688 (1968) (where two insurance policies covering the same risk contain excess-insurance clauses, the clauses are mutually repugnant and the loss should be *1214 apportioned between the two insurers on a prorata basis).
The "other insurance" clause of the Colony policy provides:
"4. Other Insurance.
"If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
"a. Primary Insurance
"[Colony] insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
"b. Excess Insurance
"This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
"(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for `your work';
"(2) That is Fire Insurance for premises rented to you or temporarily rented to you or occupied by you with permission of the owner; or
"(3) If the loss arises out of the maintenance or use of aircraft, `autos' or watercraft to the extent not subject to Exclusion g. of Coverage A (Section 1).
"When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any `suit' if any other insurance insurer has a duty to defend the insured against the `suit.' ..."
(Emphasis added.)
Colony's policy specifically states that its coverage is primary, subject to the exceptions enumerated in subsections 4.b.(1), (2), and (3). It is clear that subsections (2) and (3) are inapplicable here. Furthermore, we conclude that the language in section 4.b.(1) refers solely to first-party property coverage, which is likewise not at issue in this case. See Great Northern Ins. Co. v. Mount Vernon Fire Ins. Co., 92 N.Y.2d 682, 689, 685 N.Y.S.2d 411, 708 N.E.2d 167 (N.Y.Ct.App.1999) (interpreting the same other-insurance language at issue here to apply only "where first-party property loss coverage would serve as primary indemnification for a loss"). Specifically, the Court in Great Northern concluded that exceptions enumerated in a commercial general liability policy protected only property interests and that the phrase, "similar coverage for `your work,'" when read in the context of the enumerated coverages, meant first-party property coverage for commercial work. 92 N.Y.2d at 688, 685 N.Y.S.2d at 415, 708 N.E.2d at 171. The court further elaborated on the difference between first-party coverage and third-party coverage:
"Insurance contracts generally are assigned to one of two classes: either `first-party coverage' or `third-party coverage'.... `First-party coverage' pertains to loss or damage sustained by an insured to its property; the insured receives the proceeds when the damage occurs.... In contrast, if the insurer's duty to defend and pay runs to a third-party claimant who is paid according to a judgment or settlement against the insured, then the insurance is classified as `third-party insurance' .... Thus, wholly different interests are protected by first-party coverage and third-party coverage.
"... The interests protected ... involve property, not persons. Indeed, the goal of first-party property coverage, including fire, builder's risk and *1215 installation risk, is to reimburse the insured for the insured's actual property loss, dollar for dollar, but no more.
"Thus, read within the context of the enumerated coverages, we interpret `similar coverage for your work' to mean first-party property coverage for commercial work."
92 N.Y.2d at 687-88, 685 N.Y.S.2d at 414-15, 708 N.E.2d at 170-71.
The Lumbermens policy contains additional language in its "other insurance" clause, and that language is not present in the Colony policy:
"4. Other Insurance
"b. Excess Insurance
"This insurance is excess over:

"(1) Any of the other insurance, whether primary excess, contingent or on any other basis:
"(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or Similar coverage for `your work';
"(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
"or
"(c) If the loss arises out of the maintenance or use of aircraft, `autos' or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).
"(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement."
(Emphasis added.)
When the two policies are compared, it is clear that the language in the two policies is neither conflicting nor ambiguous. As previously noted, the enumerated coverages in section 4.b.(1) of the Colony policy refers only to first-party property coverage. The excess-insurance clause in the Lumbermens policy, i.e., section 4.b.(2), contains additional language, stating that the Lumbermens policy is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." Section 4.b.(2) of the Lumbermens policy creates a category for third-party liability coverage, for which there is no comparable provision in the Colony policy. Because the excess-insurance clause in each policy contains a different classification of risk, the clauses cannot be mutually repugnant. State Farm Mut. Auto. Ins. Co., supra. Accordingly, the Colony policy provides the primary coverage.
In Nationwide Mutual Insurance Co. v. Hall, 643 So.2d 551, 558 (Ala.1994), this Court stated:
"The determination of which insurance coverage is primary and which, if any, is excess or secondary depends on the exact language of the policy. Insurance contracts, like other contracts, are construed to give effect to the intention of the parties, and when that intention is clear and unambiguous, the insurance policy must be enforced as written."
(Emphasis added; citations omitted.)

IV. Enhanced Obligation of Good Faith
As previously stated, Georgia-Pacific and Lumbermens filed a counterclaim, alleging that Colony had breached its enhanced obligation of good faith in defending Georgia-Pacific under a reservation of rights. The trial court entered a summary judgment in favor of Colony.
Colony argues, and it is undisputed, that the underlying case has been settled within the policy limits provided by the Colony *1216 policy and that Georgia-Pacific was privy to and agreed to the settlement. Accordingly, we conclude that Georgia-Pacific and Lumbermens' counterclaim against Colony was moot, and the trial court's summary judgment for Colony on that counterclaim is due to be affirmed.
1071593  AFFIRMED.
1071604  AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in part and concurs in the result in part.
MURDOCK, Justice (concurring in part and concurring in the result in part).
In its last paragraph, the main opinion aptly observes that the underlying case filed by Rufus Scott White's estate against Georgia-Pacific, LLC, has been settled within the policy limits provided by Georgia-Pacific's policy with Colony Insurance Company and that Georgia-Pacific was privy to and agreed to the settlement. In this regard, I also note that the record indicates that Colony's defense of Georgia-Pacific did not compromise Georgia-Pacific's interests or cause injury to Georgia-Pacific. These facts provide a basis for concluding that Georgia-Pacific's claim that Colony breached its enhanced duty of good faith is without merit, rather than moot. I therefore concur in the result reached in Part IV of the main opinion.
In all other respects, I concur in the main opinion.
NOTES
[1] Georgia-Pacific and Lumbermens contend that Georgia-Pacific's policy with Lumbermens was a "fronting policy," i.e., a policy in which the deductible is equal to the policy limits, so the actual coverage is $0, essentially rendering Georgia-Pacific self-insured.