**BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware corporation, Plaintiff–Appellant and Cross–Appellee,**

v.

**STONE CONTAINER CORPORATION, a Delaware corporation, Defendant–Appellee and Cross–Appellant.**

**No. 95CA1290.**

Colorado Court of Appeals, Div. IV.

Feb. 20, 1997.

Knudsen, Berkheimer, Richardson & Endacott, Walter J. Downing, Denver, for Plaintiff–Appellant and Cross–Appellee.

Godin & Baity, LLC, Edward J. Godin, Kelly K. Robinson, Denver, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge BRIGGS.

Plaintiff, Burlington Northern Railroad Company (railroad), appeals the award of damages on its judgment for indemnification against defendant, Stone Container Corporation (landowner). The landowner cross-appeals the judgment. We affirm the judgment against the landowner for indemnification, vacate the award of damages, and remand the cause for further findings regarding, and if necessary reconsideration of, the award of damages.

The landowner purchased industrial property serviced by the railroad. The predecessor in interest to the landowner had entered into an Industrial Track Agreement (Agreement) with the railroad. The landowner assumed the rights and obligations of its predecessor under the Agreement.

The landowner's obligations included its agreement not to place or permit to be placed, or to remain, any material or other obstruction within 8 1/2 feet laterally from the center of the track. It was further obligated to indemnify and hold the railroad harmless from any claims arising out of a breach of the Agreement.

In 1989, the railroad's employee was riding the side of one of its boxcars across the landowner's property. Excessive "slack action" in the cars caused the employee to lose his grip and fall from the train. He landed on the ground upright and running, but was

injured when he tripped over a board leaning against the side of a building and fell into a construction pit. The landowner's contractor, who was performing construction on its behalf, had dug the hole and left the board against the building. Both were within 8 1/2 feet of the center of the track.

The employee filed an injury report with the railroad describing injuries to a thigh and both knees. The railroad notified the landowner of its claim for indemnification from any resulting losses. The employee returned to work three weeks later, but continued to receive treatment. The treatment was expanded to include his neck and back, which he had injured some years earlier.

In October 1992, the employee filed suit against the railroad under the Federal Employers' Liability Act (FELA) seeking damages for the 1989 accident. The employee offered to settle the case for $57,339. The railroad responded with an offer of $10,000. The case remained unsettled.

In January of 1993, while the employee was riding the side of a boxcar in extremely cold weather, he felt a pain shooting down his left arm. He filed another report of injury. It was determined that the employee had a herniated disk in his neck and this time he was unable to return to work.

The railroad again notified the landowner of its claim for indemnification. The landowner denied any legal responsibility.

The railroad entered into settlement negotiations with the employee and invited the landowner to participate in a settlement conference. The landowner's insurer sent a representative to the conference but did not permit the representative to participate in the negotiations.

The railroad settled with the employee for $230,000. The settlement expressly included any claims arising out of either the 1989 or the 1993 "accident," together with any other claims arising out of his employment with the railroad.

The railroad then brought this action seeking indemnity under the Agreement. After a trial to the court, the railroad was awarded $25,000. The award was based on the court's findings that the incidents in 1989 and 1993 were separate "events," that it was possible to separate the damages caused by the two events, that the settlement value for the 1989 event was $25,000, and that the landowner was liable for the entire amount of that settlement value but not for the 1993 event.

## I.

The landowner's cross-appeal is directed at the validity of the judgment. We therefore first consider its contention that the trial court committed three errors in determining the landowner had a duty to indemnify the railroad for the full amount of the settlement attributable to the 1989 claim. We find no error in the court's judgment against the landowner for indemnification.

### A.

■ The landowner first contends it was not obligated to indemnify the railroad under the Agreement for damages resulting from the 1989 accident because the actual cause of those damages was the failure of the railroad's equipment to operate properly. We are not persuaded.

Here, the employee alleged in his FELA complaint against the railroad that his injuries in the 1989 accident resulted from the railroad's negligence in providing a boxcar with a defective "drawbar and spring," which increased the severity of the slack action and caused the employee to be thrown off the boxcar. If this were the only basis of the claim, we might agree that the landowner would owe no duty to indemnify the railroad for the employee's damages. *See Union Pacific R.R. Co. v. Allied Chemical Corp.,* 756 P.2d 394 (Colo.App.1988).

However, the employee further alleged in his complaint that the railroad was negligent in additional ways. This included the allegation that the railroad had failed "to provide [the employee] a safe place to perform his work."

The Agreement provided that the landowner would indemnify the railroad for any injury arising "directly or indirectly" from a breach of the Agreement. It is undisputed that the landowner's placement of construc-

tion materials and debris within 8 1/2 feet of the center of the track violated the Agreement and that the employee was injured when he tripped over debris left by the landowner's contractor and fell into a construction pit dug by the contractor. Thus, the fact finder could properly find that the employee's injuries arose, at least indirectly, from the landowner's breach of the Agreement.

In these circumstances, the trial court did not err in determining that the landowner owed a duty of indemnification to the railroad. *See Missouri Pacific R.R. v. Kansas Gas & Electric Co.*, 862 F.2d 796 (10th Cir. 1988); *Burlington Northern, Inc. v. Hughes Bros., Inc.*, 671 F.2d 279 (8th Cir.1982).

## B.

■ Next, the landowner asserts the trial court erred in concluding that the railroad had not waived its right to seek indemnity from the landowner. We disagree.

Waiver is the intentional relinquishment of a known right. Waiver may be express, as when a party states its intent to abandon an existing right, or implied, as when a party engages in conduct which manifests an intent to relinquish the right or acts inconsistently with its assertion. To constitute an implied waiver, the conduct must be free from ambiguity and clearly manifest the intent not to assert the benefit. *Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984); *Burman v. Richmond Homes Ltd.*, 821 P.2d 913 (Colo. App.1991).

Here, an employee of the railroad had inspected the construction site before the accident and directed other employees to continue working. However, the landowner presented no evidence demonstrating that the condition of the construction site at the time of the inspection was the same as existed when the employee was injured. Nor did the landowner proffer evidence demonstrating that the railroad intended to forego its rights under the Agreement. Hence, the record supports the trial court's finding that the railroad had not waived its rights under the Agreement.

## C.

■ The landowner finally maintains the trial court erred in failing to apply the "equal shares" provision of the Agreement. While the claim is not without merit, existing precedent leads us to conclude to the contrary.

The two provisions of the Agreement relevant here state in pertinent part:

Section 5. [The landowner] shall not place, or permit to be placed, or to remain, any material, structure, pole or other obstruction within 8 1/2 feet laterally of the center ... of the rail of said track.... [The landowner] agrees to indemnify [the railroad] and save it harmless from and against any and all claims, demands, expenses, costs and judgments arising or growing out of loss of or damage to property or injury to or death of persons occurring directly or indirectly by reason of any breach of the foregoing or any other covenant contained in this agreement.

. . . .

Section 7. [The landowner] agrees to indemnify and hold harmless [the railroad] for loss, damage, injury or death from any act or omission of [the landowner], its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other persons or corporation while on or near said track, and if any claim or liability shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally.

Arguably, section 7 requires that the railroad's recovery be limited to fifty percent of the reasonable settlement value. In the alternative, it could be argued the Agreement is ambiguous.

However, we are not writing on a clean slate. No court has found provisions similar to these to be ambiguous. Further, the only times that courts have interpreted railroad indemnification agreements to require the parties to bear liability equally have been in cases involving provisions different from those involved here.

For example, courts have imposed equal liability when the agreement requires equal

sharing of liability for an act or omission of the property owner, but contains no separate provision containing specific clearance requirements. *See Wanser v. Long Island R.R. Co.*, 238 F.2d 467 (2d Cir.1956). Likewise, courts have required equal sharing when the agreement contains a clearance requirement clause that does *not* address indemnity or equal sharing, with that subject addressed *only* in a separate clause also imposing equal liability for joint or concurring negligence. *See Dery v. Wyer*, 265 F.2d 804 (2d Cir.1959); *Baltimore & Ohio R.R. Co. v. American Viscose Corp.*, 214 F.Supp. 287 (N.D.W.Va.1963).

In contrast, those courts that have considered provisions similar to those involved here have consistently construed them to require full indemnity, beginning with the seminal case of *Deep Vein Coal Co. v. Chicago & E.I. Ry. Co.*, 71 F.2d 963 (7th Cir.1934). The reasoning is that a provision like section 5 is the more specific and therefore governs over a more general equal shares provision like section 7. *See Graydon Anthony Lumber Co. v. Louisiana & Arkansas Ry. Co.*, 316 F.2d 858 (8th Cir.1963); *Boston & Maine R.R. v. Howard Hardware Co.*, 123 Vt. 203, 186 A.2d 184 (1962).

These railroad indemnity agreements have been in use for many years. It is not unreasonable to interpret the clearance and indemnity requirements in section 5 of the Agreement as separate from, and more specific than, the obligation and indemnity provisions in section 7, and such an interpretation is consistent with long-standing expectations. We therefore conclude the trial court properly determined the "equal shares" provision in the Agreement did not apply in these circumstances. *See Missouri Pacific R.R. Co. v. International Paper Co.*, 618 F.2d 492 (8th Cir.1980); *Deep Vein Coal Co. v. Chicago & E.I. Ry. Co., supra; Boston & Maine R.R., supra.*

## II.

The railroad contends the trial court erred in its award of damages because it incorrectly calculated "de novo" the damages suffered by the employee in the 1989 event, without considering whether the railroad's settlement with the employee was within a reasonable range. The railroad argues that, because the trial court as fact finder found the settlement was within a reasonable range, the landowner is obligated to indemnify it for the entire amount of the settlement.

We agree with the railroad that the fact finder was not free to ignore the settlement and independently determine the reasonable settlement value of the 1989 claim. However, the facts involved here are unique in that the settlement with the injured employee involved two or more separate claims, while the landowner was liable under the Agreement to indemnify the railroad only for the damages resulting from the first claim. We therefore reject the railroad's contention that the fact finder was limited to determining whether the entire settlement was reasonable and, if so, imposing liability on the landowner for the full amount of that settlement.

We instead conclude that the fact finder must first determine whether the entire settlement was reasonable. If so, the fact finder must next determine what percentage of the total damages was attributable to the first claim and then multiply that percentage times the actual total settlement amount to determine the indemnitor's liability.

Because it is not clear whether the trial court as fact finder followed this procedure, the cause must be remanded for further findings regarding, and if necessary reconsideration of, the award of damages based on the fact finder's allocation of the settlement amount between the 1989 and 1993 events.

### A.

■ The process for determining the liability of an indemnitor when a single claim against the indemnitee has been settled is well established. If the indemnitor denies liability and refuses to assume the defense of the claim under the indemnity contract, the indemnitee, without waiving its rights, may enter into a good faith, reasonable settlement with the claimant. In a later action for recovery against the indemnitor, the indemnitee need not prove absolute legal liability, the actual amount of damages, or even the specific amount of a reasonable settlement.

Rather, the indemnitee need only prove that it was potentially liable to the claimant and that the settlement amount was reasonably related to the liability exposure and the employee's injuries. *See Missouri Pacific R.R. Co. v. Kansas Gas & Electric Co., supra; Burlington Northern, Inc. v. Hughes Bros., Inc., supra.*

The rationale for this approach is based in part on the policy of encouraging the settlement of suits. The burden must not be too heavy on the indemnitee who settles a claim against it after the indemnitor has been tendered but has refused to defend the claim. To cast the burden of establishing actual liability and damages on the indemnitee would require it to establish its own liability in the action against the indemnitor. It would also place the indemnitee at risk of recovering less than the amount paid, even though the claim against it was settled in good faith and reasonably in light of the indemnitee's liability exposure and its own business needs and interests.

█ Hence, if proof were required of actual liability and damages, the indemnitee would be better served to force the injured party to prove his case and then enforce the judgment against the indemnitor. Therefore, to encourage indemnitors to honor their contractual obligations, as well as to encourage the settlement of claims covered by indemnity agreements, an indemnitee need only prove that the underlying claim was settled with the third party in good faith and reasonably. *See Tankrederiet Gefion v. Hyman–Michaels Co.,* 406 F.2d 1039 (6th Cir. 1969); *Trim v. Clark Equipment Co.,* 87 Mich.App. 270, 274 N.W.2d 33 (1978).

The analysis becomes more complicated when, as here, a settlement between an indemnitee and a third party includes two or more separate events and the indemnitor is liable to the indemnitee only for damages resulting from the first.

### B.

█ The parties have cited no precedent, and we are aware of none, addressing the procedure to follow in determining the extent of an indemnitor's liability when, as here, an indemnitee has settled two or more claims with a third party in good faith and reasonably and the indemnitor's liability extends only to the first of those claims. The procedure should not ignore the policy of encouraging the settlement of claims. At the same time, the procedure must recognize that the issue of concern between the indemnitee and third party is the total settlement, not its allocation.

Here, the trial court initially looked to the doctrine articulated in *CJI Civ.3d* 6:9 (1988). The standard instruction describes the procedure for awarding damages when the defendant is legally responsible for injuries incurred in a first event but not in a later, second event. The fact finder must apportion damages, if possible, between the two separate events, with the plaintiff allowed to recover from the defendant only the separate damages caused by the first event.

The court found that the 1993 incident was not merely a worsening of the injury sustained in 1989, but rather was an entirely separate event. It further found that the damages incurred in each event could be separated.

The trial court's findings are supported by the record. Because the landowner was not legally responsible for damages incurred in the 1993 event, and because the settlement amount included damages incurred in both events, as well as any other damages arising out of the employment, the court properly rejected the railroad's claim that it was entitled to be indemnified for the entire amount of the settlement.

The question remaining was the amount the landowner was required to indemnify the railroad for the 1989 event. The trial court concluded:

There are two ways to look at the reasonableness of the settlement. Since it is clear that a jury would give some money to [the railroad], one could look at what the parameters of a potential jury award were and anything in that parameter is reasonable. Second, you could put myself in the shoes of a reasonable juror on a one person jury and ask how much would I give the [railroad]. If the standard is the first,

then $230,000 is within the parameters but so is $1,000,000 and $1,000. The better way and the way I adopt is the second way, i.e., what was a reasonable settlement under all the facts and circumstances applying Colorado law.

. . . .

I find that the fair settlement value for the 1989 injury separate from the January 1993 injury was $25,000 and that injury was caused directly or indirectly by a breach of the agreement by [the landowner].

It is unclear whether the trial court actually found the entire settlement was reasonable. It is also unclear whether the court arrived at its award of $25,000 by ignoring the settlement amount and independently determining what it considered "the most" reasonable settlement amount for the landowner to pay solely for the 1989 claim or, instead, by allocating a percentage of the total settlement amount to that claim. To the extent the trial court ignored the settlement amount and independently determined "the most" reasonable settlement amount for the 1989 claim, we conclude that the court erred.

As noted, it would be unfair to an indemnitee settling a claim against it in good faith for a reasonable amount to face the risk of recovering a lesser amount from the indemnitor because a fact finder later independently determined that "the most" reasonable settlement of that claim was some lesser amount. Further, the fact finder would be faced with the daunting task of finding, not the actual value of the claim, but the most reasonable settlement amount for the indemnitee of the claim. This would require the fact finder to assume the position of the indemnitee at the time of settlement and evaluate, not only the value of the claim, but also the indemnitee's own unique needs and interests in seeking the settlement.

We therefore conclude that the proper approach is not to ignore the settlement amount and independently determine the most reasonable settlement amount for the 1989 claim. Rather, in order to give effect to the settlement, the fact finder must first determine whether the entire settlement was in good faith and reasonable. If so, the fact finder must then determine the percentage of the damages that should be allocated to the 1989 claim and multiply that percentage times the entire settlement amount to determine the damages for which the indemnitor is liable.

Under this approach, the fact finder avoids having to evaluate both the claim and the indemnitee's own unique needs and interests to determine "the most" reasonable amount the indemnitee should have paid to settle the 1989 claim. At the same time, it allows the indemnitee the full value of its settlement, but no more.

Here, we are unable to discern whether the trial court found the entire settlement was reasonable and, if so, whether it arrived at the $25,000 award by properly determining the percentage of the total damages that were incurred in the 1989 event and multiplying that times the actual total settlement or, instead, incorrectly ignoring the settlement amount and determining that $25,000 was "the most" reasonable settlement of that claim for the indemnitee. We must therefore remand for further findings regarding, and if necessary for reconsideration of, the damages to be awarded.

The judgment is affirmed as to the trial court's determination that the landowner is liable to the railroad for the entire amount of the settlement attributable to the 1989 claim, the award of damages is vacated, and the cause is remanded for further findings regarding, and if necessary reconsideration of, the damages award.

HUME and DAVIDSON, JJ., concur.