**LAFARGE NORTH AMERICA, INC.,**
d/b/a Lafarge West, Inc.,
Plaintiff–Appellee,

v.

**K.E.C.I. COLORADO, INC., a Colorado**
corporation, Defendant–Appellant.

No. 09CA0460.

Colorado Court of Appeals,
Div. VII.

March 4, 2010.

Wells, Anderson & Race, LLC, Larry S. McClung, L. Michael Brooks, Jr., Denver, Colorado, for Plaintiff–Appellee.

Senter, Goldfarb, & Rice, L.L.C., Jennifer M. Palmer, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, K.E.C.I. Colorado, Inc., appeals the district court's summary judgment ruling that it breached contractual obligations to defend, indemnify, and insure plaintiff, Lafarge North America, Inc. We conclude that (1) K.E.C.I. breached the duty to defend but that it is premature to assess

damages for that breach; (2) Lafarge is not entitled to summary judgment on its indemnification claim; and (3) the district court incorrectly construed K.E.C.I.'s duty to insure Lafarge. Therefore, we affirm the judgment in part, reverse it in part, and remand the case for further proceedings.

## I. Background

Lafarge was the general contractor for a highway construction project administered by the Colorado Department of Transportation (CDOT). K.E.C.I. provided traffic control services pursuant to a subcontract with Lafarge.

Late one night, a motorcyclist drove onto a highway entrance ramp and collided with a piece of road construction equipment that a Lafarge employee had parked in the only traffic lane of the ramp. The motorcyclist died in the accident; his wife, who was a passenger on the motorcycle, was seriously injured.

The injured wife sued Lafarge, the Lafarge employee who had parked the equipment on the ramp, and K.E.C.I. for negligence. Lafarge demanded that K.E.C.I. provide it a defense and indemnify it for any liability it might have, invoking certain provisions of the subcontract and K.E.C.I.'s insurance policy, on which Lafarge was an additional named insured. K.E.C.I. and the insurer refused Lafarge's demands, essentially for the reasons that (1) K.E.C.I. was not even partially at fault and its duties to defend and indemnify Lafarge apply only if K.E.C.I. was at least partially at fault; and (2) because the insurance policy was only an "excess" coverage policy, (a) there is no duty to defend under the policy, and (b) there is no coverage under the policy to pay Lafarge because Lafarge had not incurred any liability in excess of that covered by its own insurance policy. Lafarge settled the claims against it by paying $700,000 to the injured wife in return for a release.

Lafarge brought this case against K.E.C.I. and two of K.E.C.I.'s insurers. Its amended complaint asserted claims for breach of contract, fraud, and violation of the Colorado Consumer Protection Act. In essence, Lafarge alleged that (1) K.E.C.I. is contractually obligated to indemnify Lafarge for liability arising from Lafarge's own negligence so long as the liability arose in part from K.E.C.I.'s acts or omissions, which it did here; (2) the complaint in the personal injury case triggered K.E.C.I.'s contractual duty to defend Lafarge because it alleged that K.E.C.I. was at least partially at fault for the accident; and (3) the subcontract obligates K.E.C.I. to provide Lafarge with "primary," not merely "excess" insurance coverage.

The parties agreed to litigate the case in two phases, with the first phase limited to resolving the issues pertaining to interpretation of the indemnity and insurance provisions of the subcontract. After the parties completed discovery on those issues, they filed cross-motions for summary judgment. The district court granted Lafarge's motion and denied K.E.C.I.'s. As relevant here, the court ruled as follows:

- the subcontract unambiguously requires K.E.C.I. to indemnify Lafarge for Lafarge's negligence if K.E.C.I. was at least partially at fault;
- K.E.C.I. had breached the indemnity obligation;
- the subcontract unambiguously requires K.E.C.I. to defend Lafarge if a claim which could trigger K.E.C.I.'s obligation to indemnify Lafarge was asserted against Lafarge;
- K.E.C.I. had breached the duty to defend because the complaint in the personal injury case alleged that both Lafarge and K.E.C.I. were at fault;
- the subcontract unambiguously requires K.E.C.I. to provide Lafarge with primary insurance coverage;
- K.E.C.I. had breached the duty to provide primary insurance; and
- K.E.C.I. is liable to Lafarge for Lafarge's cost of defense and the amount Lafarge paid to settle the personal injury case.

K.E.C.I. moved for reconsideration. It asserted that the court had misinterpreted the subcontract and had erred by finding it liable for indemnity when there had been no factual determination that it was even partially at fault for the accident. In denying K.E.C.I.'s

motion, the court again rejected K.E.C.I.'s arguments concerning interpretation of the subcontract and found (for the first time) that K.E.C.I. had waived its right to contest its liability for indemnification by breaching its duty to defend.

The district court certified its summary judgment as final. K.E.C.I. appeals.

## II. Discussion

K.E.C.I. raises the following contentions on appeal:

(1) The district court erred in granting summary judgment in Lafarge's favor on the duty to indemnify because

(a) the indemnification clause unambiguously provides that K.E.C.I. is liable only for its own negligence,

(b) the clause is at least ambiguous on that score, and

(c) it may challenge its alleged duty to indemnify Lafarge even if it breached its duty to defend.

(2) The court erred in finding that it had breached the duty to indemnify because the issue of breach was not before the court and no fact finder has found that it was at least partially at fault.

(3) The court erred in finding that K.E.C.I. has a duty to defend because, again, it is liable only for its own negligence; therefore, it only has a duty to defend Lafarge where Lafarge is alleged to be vicariously liable for K.E.C.I.'s acts, and no such liability was alleged in the personal injury case.

(4) The court erred in construing the insurance clause to require K.E.C.I. to provide Lafarge with primary insurance coverage because

(a) the clause does not contain any language imposing such a requirement, or

(b) the clause is ambiguous, and that ambiguity should he resolved against Lafarge under the relevant extrinsic evidence.

(5) The court erred in determining that K.E.C.I. had breached the contractual duty to insure because the issue of breach was not before the court.

We address these contentions in turn.

### A. Standard of Review

We review a district court's entry of summary judgment de novo. *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.,* 114 P.3d 862, 865 (Colo.2005). The construction of a contract (including the question whether the contract is ambiguous) is a question of law, which we also review de novo. *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.,* 109 P.3d 969, 974 (Colo. 2005); *Boulder Plaza Residential, LLC v. Summit Flooring, LLC,* 198 P.3d 1217, 1220 (Colo.App.2008).

### B. Construction of the Subcontract

#### 1. Duty to Indemnify

##### a. Construction of the Indemnity Clause

■ The indemnity clause at issue here, section 10(b) of the subcontract, provides as follows:

[K.E.C.I.] further specifically obligates [itself] to [Lafarge] in the following respects, to wit: . . .

(b) To indemnify [Lafarge] against and save [it] harmless from any and all claims, suit, or liability for injuries to property, injuries to persons including death, and from any other claims, suits, or liability on account of [sic], arising in whole or in part of [sic] any act or omission of [K.E.C.I.], or any of [its] officers, agents, employees or servants. . . .

■ We construe an indemnity agreement in accordance with the same principles that govern the interpretation of contracts generally. *Boulder Plaza,* 198 P.3d at 1221; *Mid Century Ins. Co. v. Gates Rubber Co.,* 43 P.3d 737, 739 (Colo.App.2002). Therefore, we must strive to effectuate the contracting parties' intent, as determined primarily from the contract language. *East Ridge,* 109 P.3d at 974; *Boulder Plaza,* 198 P.3d at 1221. To do this, we look to the language of the provision at issue, giving the words and phrases used therein their plain and ordinary meanings, and to any other related provisions so

as to interpret the contract in a way that harmonizes and gives effect to all its provisions. *East Ridge*, 109 P.3d at 974; *Boulder Plaza*, 198 P.3d at 1221; *Mid Century*, 43 P.3d at 739.

If, after applying these principles, we conclude that the provision is unambiguous, we must apply it as written. *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo.1998); *Mapes v. City Council*, 151 P.3d 574, 577 (Colo.App.2006). A contract provision is ambiguous " 'if it is fairly susceptible to more than one interpretation.' " *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo.1996) (quoting *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo.1990)); *accord East Ridge*, 109 P.3d at 974. However, the mere fact the parties express different opinions as to the meaning of the provision does not itself establish that there is an ambiguity. *Cherokee Metropolitan Dist. v. Simpson*, 148 P.3d 142, 146 (Colo.2006); *East Ridge*, 109 P.3d at 974.

■ In construing the indemnity clause here, we are also mindful of the following principles:

- An indemnity provision that a party contends renders the indemnitor liable for the indemnitee's conduct must contain " 'clear and unequivocal language to that effect.' " *Public Service Co. v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1283 (Colo.1992) (quoting *Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 426 (Colo.1988)); *accord Boulder Plaza*, 198 P.3d at 1221. However, the failure to refer specifically to the indemnitee's negligent conduct in the agreement does not render "an otherwise unambiguous indemnity provision insufficient to indemnify the indemnitee from its own negligence." *Public Service Co.*, 829 P.2d at 1284.

- The general rule is that "indemnity agreements which purport to indemnify for the negligent conduct of an indemnitee must be strictly construed. . . ." *Id.* And though there has been "a growing trend to relax the rule of strict construction in construing indemnity contracts in commercial settings," *id.* at 1285, it remains the rule that " 'a contractual provi-

sion should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties.' " *Id.* at 1283–84 (quoting *United States v. Seckinger*, 397 U.S. 203, 211 [90 S.Ct. 880, 25 L.Ed.2d 224] (1970)); *accord Boulder Plaza*, 198 P.3d at 1221.

We conclude that the indemnity clause unambiguously requires K.E.C.I. to indemnify Lafarge for Lafarge's own negligence where Lafarge's liability arises out of any incident which is at least partially the result of K.E.C.I.'s acts or omissions.

The provision at issue here is indistinguishable in principle from the one at issue in *Public Service Co.* That provision stated that the indemnitor would "save and hold harmless" the indemnitee "from and against all claims, liabilities, causes of action, or other legal proceedings" for damage or injuries to property or persons "in any way arising out of, connected with or resulting from the exercise by [the indemnitor] of the rights granted" by the contract. *Public Service Co.*, 829 P.2d at 1282. The court held that this clause unambiguously required the indemnitor to indemnify the indemnitee for the indemnitee's own negligence. In so holding, the court found it significant that the clause referred to "liabilities" and broadly covered such liabilities "in any way arising out of, connected with or resulting from" the indemnitor's exercise of its contractual rights. *Id.* at 1283.

The indemnity clause here similarly covers Lafarge's "liability" and encompasses such liability "arising in whole or in part" from K.E.C.I.'s acts and omissions. Though the language of the clause here is somewhat different from that in the clause at issue in *Public Service Co.*, those differences are not qualitatively such as to convince us that the two clauses are functionally distinguishable.

The cases on which K.E.C.I. relies are distinguishable, either because of differences in contractual language or governing law. For example, in *Boulder Plaza*, a division of this court held that an indemnity clause did not require the indemnitor to indemnify the

indemnitee for its own negligence, principally because the clause did not purport to cover the indemnitee's "liabilities" and did not broadly cover any liability arising "in any way" from the indemnitor's acts. *Boulder Plaza,* 198 P.3d at 1222.

In *Englert v. The Home Depot,* 389 N.J.Super. 44, 911 A.2d 72 (N.J.Super.Ct.App.Div.2006), the clause did not expressly cover the indemnitee's liability, the obligation applied only "to the extent" the injury was caused by the indemnitor's acts, and New Jersey law (unlike Colorado law) required that the indemnitee's negligence or fault be referred to in the agreement. The clause at issue in *Ostuni v. Town of Inlet,* 64 A.D.3d 854, 881 N.Y.S.2d 678 (2009), was worded similarly to the one at issue in *Englert.* And New York law voided any indemnity agreement purporting to hold an indemnitor responsible for the indemnitee's acts.

Nor are we persuaded that any alleged disparity in bargaining power matters here. The clause is not ambiguous. The contract was bargained for: it was not one of adhesion. K.E.C.I. cites no authority for the proposition that a mere disparity in bargaining power between two commercial entities renders an unambiguous indemnity clause either ambiguous or unenforceable.

In sum, we reject K.E.C.I.'s contentions that the indemnity clause unambiguously requires K.E.C.I. to indemnify Lafarge only for K.E.C.I.'s negligence or, alternatively, is ambiguous in that regard. It unambiguously requires K.E.C.I. to indemnify Lafarge for Lafarge's negligence.[1]

### b. K.E.C.I.'s Liability Under the Indemnity Clause

■ We agree with K.E.C.I., however, that the district court erred in determining at the summary judgment stage that K.E.C.I. is liable to Lafarge under the indemnity clause.

The district court correctly ruled that K.E.C.I. is liable under the clause only if it was partially at fault. In further determining that K.E.C.I. had breached the obligation, however, the court apparently thought it enough that the plaintiff in the personal injury case had alleged that K.E.C.I. was at fault. This was error because K.E.C.I.'s liability for indemnity is expressly conditioned on its fault in fact. Nothing in the clause indicates that a mere allegation of fault triggers liability. Indeed, the clear language of the clause is to the contrary. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 300 (Colo. 2003) ("the duty to indemnify is only triggered where the [provision] actually covers the alleged harm"); *Constitution Assocs. v. New Hampshire Ins. Co.,* 930 P.2d 556, 563 (Colo.1996) (same); *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089–90 (Colo.1991) (same; also noting that whether the duty to indemnify is triggered is "a question of fact to be decided by the trier of fact").

■ The district court's alternative conclusion that K.E.C.I. waived its right to contest its obligation to indemnify Lafarge by breaching its duty to defend is also contrary to Colorado law. Because the duties to defend and to indemnify are "separate and distinct," *Cyprus Amax,* 74 P.3d at 299; *Hecla Mining,* 811 P.2d at 1086 n. 5, the former duty is triggered more easily than the latter, *Constitution Assocs.,* 930 P.2d at 563, and a party may have a duty to defend but not a duty to indemnify, *id.,* a party's breach of the duty to defend does not preclude it from contesting its alleged duty to indemnify. *Bainbridge, Inc. v. Travelers Cas. Co.,* 159 P.3d 748, 756 (Colo.App.2006); *McGowan v. State Farm Fire & Cas. Co.,* 100 P.3d 521, 527 (Colo.App.2004); *accord Signature Development Cos. v. Royal Ins. Co.,* 230 F.3d 1215, 1221–22 (10th Cir.2000) (applying Colorado law); *Flannery v. Allstate Ins. Co.,* 49

1. Having concluded that the indemnity clause is unambiguous, we also conclude that the district court did not err in refusing to consider K.E.C.I.'s extrinsic evidence of its meaning. *See Public Service Co. v. Meadow Island Ditch Co. No. 2,* 132 P.3d 333, 339 (Colo.2006) (while extrinsic evidence of local usage and circumstances surrounding the making of the contract may be considered in determining whether an ambiguity exists, the court may not consider the parties' extrinsic expressions of intent for that purpose).

F.Supp.2d 1223, 1227–29 (D.Colo.1999) (applying Colorado law).

We are not persuaded that *Burlington Northern R.R. Co. v. Stone Container Corp.,* 934 P.2d 902 (Colo.App.1997), on which Lafarge relies, requires a different result. In that case, which involved an insured's claim against the insurer, the act triggering the indemnitor's indemnity obligation was undisputed and there had been a trial at which the fact finder had concluded that the triggering act had occurred. *Id.* at 904–05. In holding that an indemnitee is not required to prove "absolute legal liability" to be entitled to indemnification for a settlement with the injured party, the division was clearly speaking of the indemnitee's liability to the injured party. *Id.* at 906–07; *see also id.* at 907 ("the *indemnitee* need only prove that *it* was potentially liable to the claimant") (emphasis added). Nothing in that decision indicates that the indemnitee need not prove that the act of the indemnitor triggering the indemnitor's liability occurred if, as here, such an act is indeed required. Here, that act—K.E.C.I.'s negligence—has not been established.

In sum, we conclude that the district court correctly construed the extent of K.E.C.I.'s duty under the indemnity clause but that it erred in finding on summary judgment that K.E.C.I. had breached its duty.[2]

## 2. Duty to Defend

■ K.E.C.I. challenges the district court's conclusion that it breached its duty to defend on the same basis it challenges the court's conclusion that the indemnity clause requires it to indemnify Lafarge for Lafarge's own negligence—that the clause limits the indemnity obligation to K.E.C.I.'s own negligence.[3] We have rejected that proposed construction of the clause, however, and therefore (and for the reason noted below) K.E.C.I.'s challenge to the court's finding that it breached its duty to defend also fails.

Unlike the duty to indemnify at issue here, K.E.C.I.'s duty to defend was triggered so long as the injured party alleged facts even potentially triggering the obligation to indemnify. *See Cyprus Amax,* 74 P.3d at 299; *Hecla Mining,* 811 P.2d at 1089. The injured party's complaint did so, specifically alleging that both Lafarge and K.E.C.I. were negligent and that the injuries were the result of "their individual and collective negligent conduct." *See Cyprus Amax,* 74 P.3d at 299 (question whether the duty to defend is triggered is answered by looking no further than the four corners of the underlying complaint); *Hecla Mining,* 811 P.2d at 1089–90 (same); *see also American Economy Ins. Co. v. Schoolcraft,* 551 F.Supp.2d 1235, 1239 (D.Colo.2007) (same; the issue is one of law) (applying Colorado law). Therefore, the district court properly determined on summary judgment that K.E.C.I. had breached its duty to defend.

It is unclear what damages the district court assessed for the breach of this duty because the court did not indicate what damages it was assessing for each breach. But to the extent it awarded damages including the settlement amount, the award must be reversed because such an award depends on whether K.E.C.I. breached its duty to indemnify. That issue has yet to be determined.

## 3. Duty to Provide Insurance

Section 9 of the subcontract sets forth K.E.C.I.'s obligation to provide insurance. It states, in relevant part:

> (a) ... [K.E.C.I.] shall also provide and maintain ... in full force and effect during the term of this Subcontract insurance ... in a company satisfactory to [Lafarge], protecting [K.E.C.I.], [CDOT], and [Lafarge] against liability from damages because of injuries, including death, suffered by persons other than employees of [K.E.C.I.] ... arising from and growing

---

**2.** In light of this conclusion, we need not address K.E.C.I.'s argument that the district court erroneously held it liable for punitive damages paid by Lafarge. All issues concerning breach of the duty to indemnify and damages remain to be resolved in the district court.

**3.** The parties agree that the indemnity clause imposes some duty to defend.

out of [K.E.C.I.'s] operations in connection with the performance of this Subcontract.

(b) Required insurance shall be in the amounts and coverage's [sic] specified by the contract with [CDOT]. In no event shall the required insurance be less than the following: Such insurance covering personal injuries or death shall be in the sum of not less than $250,000 for one person and not less than $500,000 for a single accident.... Written proof satisfactory to [Lafarge] of compliance with this section shall be furnished to [Lafarge] before any work is performed under this Subcontract....

The contract between Lafarge and CDOT (with which section 9 of the subcontract requires K.E.C.I. to comply) obligates Lafarge to provide "[c]omprehensive general liability" insurance and to "name [CDOT] as an additional named insured" on that policy. Neither that contract nor CDOT's specifications, however, state that the liability insurance Lafarge was obligated to provide must be "primary"—that is, insurance that is not contingent on the exhaustion of another policy of insurance. *See Allstate Ins. Co. v. Avis Rent–A–Car System, Inc.,* 947 P.2d 341, 346 (Colo.1997) ("When one insurance policy is 'primary' and the other policy is 'excess,' the primary insurer pays for damages up to the limits of its policy; when that policy is exhausted, the excess insurer covers any remaining damages up to the limits of its policy."); *DiCocco v. National General Ins. Co.,* 140 P.3d 314, 316 (Colo.App.2006) ("Primary insurance ... provides coverage of a given loss at the 'first level' of loss, after satisfaction of any deductible."); *Black's Law Dictionary* 815 (8th ed. 2004). (There is some indication in the record that CDOT changed its specifications in 2005 to expressly require primary insurance. But actual evidence of that change is not in the record and, in any event, any such change occurred after the parties entered into the subcontract.)

Before beginning work on the project, K.E.C.I. tendered a certificate of insurance to Lafarge indicating that Lafarge was an additional named insured on K.E.C.I.'s comprehensive general liability insurance policy. Specifically, the certificate stated that La-farge was an "additional insured as respects general liability coverage, per Add'l Insd Endr CG8330 97199) (attached)." The attached document stated, as relevant here: "Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary or you request that it apply on a primary basis."

A Lafarge representative conceded in his deposition that Lafarge received the certificate before K.E.C.I. began the work, a Lafarge employee reviewed the certificate, and Lafarge voiced no objection to the certificate or the nature of the coverage until after the accident.

K.E.C.I. contends the district court erred in concluding that it breached the obligation to provide insurance because: (1) it was contractually required to provide coverage only for its own negligence and not for any negligence of Lafarge; and (2) there was no contractual obligation that it provide primary, as opposed to excess, insurance. We disagree with K.E.C.I.'s first contention but agree with its second.

K.E.C.I.'s contentions, and Lafarge's responsive arguments, present questions of contract interpretation and application of the law which, as noted above, we review de novo.

### a. Coverage for Lafarge's Negligence

It is undisputed that K.E.C.I. was obligated to provide Lafarge with "liability" insurance naming Lafarge as an insured party. Liability insurance compensates "an insured ... for damages the insured must pay to others because of [its] own actions." *Village Homes of Colo., Inc. v. Travelers Cas. & Surety Co.,* 148 P.3d 293, 298 (Colo.App. 2006), *aff'd,* 155 P.3d 369 (Colo.2007); *accord Browder v. United States Fidelity & Guaranty Co.,* 893 P.2d 132, 134 n. 3 (Colo.1995) (citing Rowland H. Long, *Law of Liability Insurance* § 1.01 (1994)), *overruled in part by Hoang v. Assurance Co.,* 149 P.3d 798, 804 (Colo.2007); *see also* 15 *Holmes' Appleman on Insurance 2d* § 111.1, at 10 (2000); 20 *Holmes' Appleman on Insurance 2d*

§ 129.1, at 4; *Black's Law Dictionary* 817. Therefore, the plain meaning of the term "liability insurance" refutes K.E.C.I.'s contention that the insurance needed only to cover K.E.C.I.'s negligence.

The subcontract also clearly expresses an intent that the insurance cover Lafarge's own negligence (subject to an important limitation noted below) because it essentially required K.E.C.I. to provide the insurance coverage Lafarge was required to provide CDOT for Lafarge's actions (again, subject to an important limitation noted below). Contrary to K.E.C.I.'s assertion, there is nothing illogical or unreasonable about such a requirement. Such a requirement is not an uncommon feature of construction contracts. *See, e.g., Pav–Lak Industries, Inc. v. Arch Ins. Co.,* 56 A.D.3d 287, 866 N.Y.S.2d 671 (2008); *Clapper v. County of Albany,* 188 A.D.2d 774, 591 N.Y.S.2d 258 (1992).

Nonetheless, the obligation for coverage is limited to injuries "arising from and growing out of [K.E.C.I.'s] operations in connection with the performance of the Subcontract." Therefore, the obligation to provide insurance covering Lafarge's liability, including for Lafarge's own acts, exists only for situations where the injury has the connection to K.E.C.I.'s work mandated by the express language of section 9 of the subcontract.

We express no opinion on whether K.E.C.I. breached its duty to provide insurance in this regard because the policy is not part of the record. Further, any determination of damages for any such breach is premature at this stage because no determination has been made either that the required connection to K.E.C.I.'s performance of the subcontract exists or that the policy fails to cover an injury for which K.E.C.I. was required to provide coverage and for which Lafarge has been held liable.

### b. Primary or Excess

■ Though neither the contract nor the subcontract expressly requires primary insurance coverage, Lafarge argued in the district court, as it does on appeal, that liability insurance and general liability insurance are synonymous with primary insurance. We conclude that Lafarge is incorrect, and that the district court accordingly erred in apparently accepting Lafarge's argument.

■ In contrast to primary insurance— which, as noted above, covers an injury at the first level before any other insurance is exhausted—excess insurance "is activated only after the magnitude of the loss exceeds the limits of the applicable 'primary' insurance." *DiCocco,* 140 P.3d at 316; *accord Allstate Ins. Co.,* 947 P.2d at 346; *see also Black's Law Dictionary* 816.

■ The fact that a policy is excess, as opposed to primary, does not affect whether it constitutes liability (including comprehensive general liability) insurance. Whether insurance is liability insurance depends on the nature and extent of the conduct, injuries, claims, and damages covered. A liability policy can be primary or excess, may cover liability on a "pro rata" basis, or may contain an "escape" clause providing that it will not cover any loss that is also covered by another policy. *See Allstate Ins. Co. v. Frank B. Hall & Co.,* 770 P.2d 1342, 1345 (Colo.App.1989). Again, even a cursory review of insurance case law reveals numerous cases involving excess comprehensive general liability insurance policies. *See, e.g., Hartford Accident & Indemnity Co. v. Pacific Mut. Life Ins. Co.,* 861 F.2d 250, 252 (10th Cir.1988); *Colony Ins. Co. v. Georgia–Pacific, LLC,* 27 So.3d 1210, 1213 (Ala.2009); *River Village I, LLC v. Central Ins. Cos.,* 396 Ill.App.3d 480, 335 Ill.Dec. 707, 919 N.E.2d 426 (2009); *Englert,* 911 A.2d at 81–82. Indeed, in *Englert,* the court squarely held that a subcontractor satisfied its contractual obligation to name the contractor as an additional insured on a comprehensive general liability policy by naming it as an additional insured on an excess policy; the subcontract did not require primary coverage. 911 A.2d at 74–75, 81–82.

We observe that because liability coverage (including comprehensive general liability coverage) may be excess, many parties desiring primary coverage have taken to explicitly requiring primary coverage (as CDOT may do now). *See, e.g., Meyer v. Lee Collins Air Conditioning Co.,* No. 1 CA–CV 07–0188, 2008 WL 2154798, at *1 (Ariz.Ct.App. May

20, 2008) (unpublished memorandum decision); *Georgia–Pacific LLC v. Swift Transp. Corp.,* No. W2008–00344–COA–R3–CV, 2008 WL 4380885, at *2 (Tenn.Ct.App. Sept.29, 2008) (unpublished decision); *Bituminous Cas. Corp. v. McCarthy Bldg. Cos.,* No. 04–08–00152–CV, 2009 WL 962536, at *2 (Tex. App. Apr.8, 2009) (unpublished memorandum opinion). It is undisputed that Lafarge did not do so here.

We therefore conclude that the subcontract does not unambiguously require K.E.C.I. to provide primary insurance. Lafarge offered no extrinsic evidence of the parties' intent to require primary insurance. The only extrinsic evidence of the point was Lafarge's acceptance, without objection, of K.E.C.I.'s certificate clearly showing excess coverage. Given that evidence, we must therefore resolve the ambiguity against Lafarge as the party that drafted the subcontract. *Allstate Ins. Co.,* 947 P.2d at 346; *Moland v. Indus. Claim Appeals Office,* 111 P.3d 507, 510–11 (Colo.App.2004); *see also East Ridge,* 109 P.3d at 974–75 (where a contract is ambiguous, the parties' conduct before the controversy arose is a reliable test of their interpretation of the agreement).

It follows that K.E.C.I. could not have breached the subcontract by failing to provide primary insurance.

### III. Conclusion

The judgment is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.

Judge ROMÁN and Judge MILLER concur.